## BLOODWORTH v. JACOBS et al.

The debtor has the right to make the imputation of any payment made by him. If he do not exercise this right, the creditor may do so. If neither make any imputation, the law makes it for them ; and, in all cases, the imputation takes place in one of these modes, at the time of the payment. Where the imputation is made by the creditor, the debtor is always protected against surprise as well as fraud.

When a debtor has accepted a receipt in which a payment is imputed to a particular debt, it it is irrevocable, unless in cases of surprise or fraud on the part of the creditor. C. C. 2161.

By the term payment is meant not only the delivery of a sum of money, but the performance of an obligation. It is an act requiring the exercise of the will—of consent.

<div style="float:right">BLOODWORTH
*v.*
JACOBS.</div>

Where a factor receives the proceeds of a crop to be held at the disposition of the owner, the amount cannot be considered as an ordinary debt, upon which compensation necessarily operates. It is an irregular deposit, identical with a loan for use; and no compensation takes place as to a demand for the restitution of a deposit or loan for use. C. C. 2207 2927.

Though the distinction formerly existing between a perfect and imperfect deposit is abrogated by article 2934 of the Civil Code, which recognises as the only real deposit a thing received to be preserved in kind, without the power of using it, and to be restored identically, yet parties are at liberty by their contracts, or course of dealing, to create irregular deposits, which, between themselves, are inviolate, and prevent the effects which [the law, in the absence of any such agreement or course of dealing, would have upon their respective rights.

The contract implied between principal and factor, in the ordinary transaction of business, partakes, in some respects, of the nature of the contracts both of loan and irregular deposit. Their accounts-current are necessarily provisional until settled, and, even after settlement, may be rectified by either party on account of errors or omissions, subject to which every settlement is held to be made.

Where a factor sends an account to his principal, at the usual time, in which certain imputations are made by the former, and the principal approves the account, or receives and acquiesces in it, and there is no fraud or surprize complained of by him, the imputation of payment must be considered as having been made by the authority of the principal, the ratification of the acts of the factor being tantamount to an original imputation by the principal; and such imputations cannot be subsequently changed by the debter, nor by third persons.

Every ratification by the principal of the act of an agent, relates back to the time of doing the act, or making the contract, which is ratified; and this principle applies as well to acts of imputation of payment, as to other acts.

The product, or substitute of a thing follows the nature of the thing itself, so long as it can be ascertain to be such. So the property of a principal, entrusted to a factor for a special purpose, is considered still to belong to the principal, notwithstanding any change of form it may have undergone, so long as it can be identified.

APPEAL from the Parish Court of New Orleans, *Maurian, J.*
*H. H. Strawbridge, Elmore, W. W. King,* and *H. A. Bullard,* for the plaintiff. *Benjamin, Micou,* and *Grymes,* for the appellants.

The judgment of the court was pronounced by

EUSTIS, C. J. The plaintiff is the holder of a promissary note for the sum of $11,666, drawn by *William Hunter,* in favor of *Charles A. Bullard,* secured by mortgage on a certain plantation and slaves, which were purchased at a sheriff's sale by one of the defendants, *Charles A. Jacobs,* for the sum of $60,982, for which the purchaser only paid to the sheriff the sum of $4,000 07, assuming to pay the mortgages on the property for the balance of the purchase money.

The petition charges that *Jacobs* refuses to pay the amount of this note, under the pretence that there are certain pre-existing mortgages on the property which will absorb the unpaid part of the price, and which have a priority over that of the plaintiff; but the petition charges that these mortgages do not in fact exist upon the property sold, but have been extinguished altogether or in part, so that there will remain in the hands of Jacobs a sufficient portion of the unpaid purchase money to satisfy the plaintiff's debt and interest. The prayer of the petition is for judgment against *Jacobs,* and that the holders of the outstanding mortgages, which are set up as taking the precedence of the plaintiff's, " be decreed to show how much, if any, of said mortgages exists in their favor respectively," and for general relief. &c.

The defendants, cited as holders of the mortgages, *Lambeth* and *Thompson,* and also *Jacobs,* filed separate answers, in which they plead the general issue,

BLOODWORTH and on this the parties went to trial.   There was judgment against *Jacobs* for
*v.* the plaintiff's debt and interest, and the defendants have appealed.
JACOBS.

The case depends on the validity of certain transactions between the defendants and the debtor, *Hunter*, which the plaintiff alleges have been to his detriment, by the misapplication of certain funds of the debtor, from time to time, by *Lambeth* & *Thompson* in the extinguishment of certain debts of their own, instead of applying them to the payment of the mortgage notes, which were on the property purchased by *Jacobs*, and which the plaintiff, a subsequent mortgage creditor, had an interest in having reduced.

The rules concerning the imputation of payments were laid down with such admirable clearness and precision in the Roman law, that they have undergone very little change since, and the learned counsel who argued this case concur in their exposition of them.

The debtor has first the right to make the imputation; if he does not exercise this right, it then appertains to the creditor; if neither make the imputation, the law makes it for them; and in all cases the imputation takes place in one of these modes at the time payment is made, it being understood that where the imputation is made by the creditor, the debtor is always protected against surprize as well against fraud.

After the debtor shall have accepted a receipt in which the imputation is made by the creditor to any particular debt, it becomes irrevocable, unless there has been surprise or fraud on the part of the creditor.

But there is a preliminary enquiry to be made in order to determine this case, and that is, as to the meaning of the word payment, concerning which our Code removes every doubt.   Payment is a mode of extinguishing obligations. It is not only the delivery of a sum of money, but the performance of an obligation.   It is an act calling for the exercise of the will—of consent, without which it has not the characteristics of that mode of extinguishing obligations.

It by no means follows because a banker has the money of his customer, that he can apply it in payment, or that a factor, selling the crop of the planter, has necesssarily that control over the proceeds.   The disposition of the fund in both cases, depends upon the agreement, or course of dealing, between the parties.   On the breach of the agreement, or the interruption of their relation, what may be the operation of compensation as to their mutual debts, it is not now necessary to determine.   Pothier, Contrat de Nantissement, no. 47.   Our enquiry is as to the law applicable to the state of facts which this case presents, and whether the defendants were bound to apply the funds of *Hunter* otherwise than they did apply them.   If a factor receive a fund for a particular object under instructions from his principal, no law and no principle of morals will permit him to apply it to any other; and how any different appropriation of it can be required from him by a third person, it is difficult to apprehend.   *Grave est fidem fallere.*   Take a very common case.   The current expenses of a plantation must be paid—a man's family must be supported; and if the factor agree to pay bills, or furnish money for these purposes to a planter, out of the proceeds of a crop consigned to him, can he, after procuring the consignment, apply the proceeds to the extinguishment of a previous debt, and set at nought the very condition on which the crop was consigned to him.   We have not considered the law to be so.

In the case of *Walker* v. *Birch*, 6 Term. Rep., 258, in which the assignees of a factor claimed to retain a quantity of cotton under the lien for a general

balance, in order to indemnify them for certain bills of the principal on which <span style="float:right">BLOODWORTH<br>v.<br>JACOBS.</span> the bankrupt was liable, Lord Kenyon said, after stating that there was no doubt in general as to the existence of the lien, but that the question arose as to its application to the present case : "It is a maxim as old as our law, *conventio vincit legem.* The parties may if they choose introduce into their contract an article to prevent the application of a general rule of law. In order to determine the present case, it is not necessary to consider how the case would have been, if there had been no express stipulation between the parties, for the whole resolves itself into this, that the goods were deposited *for a particular purpose.*"

An abuse of trust can confer no rights on the party abusing it, nor on those who claim in privity with him. Opinion of Lord Ellenborough in *Taylor v. Plummer,* 3 Maule and Selwyn, 574. See *The Farmers' and Merchants' Bank of Memphis* v. *Franklin & Henderson,* 1 An. Rep. 393.

Bankers have a lien on bills deposited with them for general account, but if the securities are deposited as a pledge for a specific sum, the banker has no lien on them beyond that sum, though the customer be previously indebted to him in a larger amount. 2d Kent. Com., 5th ed., 584. Story on Agency, ss. 362, 373, 378. 15 Mass. 389. Where the parties have contracted for a particular time and mode of payment, a factor has no right to set up any claim of lien inconsistent with the terms of the contract. *Chase* v. *Westmere,* 5 Maule and Selwyn, 180.

It is obvious, in the instance we have given, of a factor receiving the proceeds of a crop to be held at the disposition of its owner for the whole or for a part, that he has no right to make any other disposition of it in the mean time. The amount is at the credit, and subject to the order of the owner. A sum of money thus placed cannot be considered as an ordinary debt, upon which compensation necessarily operates. It is an irregular deposit, which is identical with a loan for use. Massé, Dictionnaire de Droit Commercial, *Verbis, Crédit Ouvert,* § 2, and *Compte-Courant.* 2 Pardessus, Droit Commercial, ss. 491, 514. Civil Code, 2900.

By our Code no compensation takes place as to a demand for the restitution of a deposit or a loan for use. Arts. 2207, 2927. And the distinction which exists between a perfect and imperfect deposit, purports to be abrogated by article 2934, which recognizes only as a real deposit the case of the delivery of a thing to be preserved in kind and to be returned identically. But we consider parties at liberty by their contracts, or course of dealing, to create irregular deposits, which, between themselves, are to be inviolate, and prevent the effect which the law, in the absence of any such agreements or course of dealing, would have upon their respective rights.

The existence of accounts to which, under the name of accounts-current, the law has given a certain effect, between the factor and his principal, necessarily pre-supposes two species of contracts—of loan and of irregular deposit, or rather, the contract implied between them in the ordinary transaction of business partakes in some respects of both. These accounts are necessarily provisional until settled, and, even after settlement, may be rectified by either party on account of errors or omissions, subject to which every settlement is held to be made. 2 Pardessus, Droit Commercial, § 475.

By article 2161 of the Code, which we have before noticed, when the debtor has accepted a receipt by which the creditor has made an imputation of money he has received to one debt, the debtor cannot change the imputation,

unless in case of fraud or *surprize*. When, therefore, at the usual time for rendering his accounts, the factor sends his account to his principal, in which certain imputations of payment are made by him, and the latter approves the account, *accepts the receipt*, in the language of the Code, and there be no fraud or surprise of which he can complain, the payments are to be considered as having been made by the authority of the debtor.

The ratification of the acts of his agent, are considered tantamount to an original imputation of payment by himself; and it is a principle of law well settled, that every ratification relates back to the time of the doing of the act, or making of the contract, which is ratified. Ratificationes negotiorum gestorum ad illa tempora reduci oportet in quibus contracta sunt. Law 25, in fin. Cod. de Donat. inter viv. et ux. 5, 16.

Ainsi de même que la ratification des actes faits en notre nom, mais sans notre ordre, la confirmation des actes auxquels nous avons concouru, a, par sa nature même, un effet retro-actif relativement à la personne qui confirme ou ratifie.

Ce n'est point à son égard un contrat nouveau, c'est l'ancien qui conserve ou reprend sa force, et qui produit son effet du jour de sa date, et non pas seulement du jour de la confirmation. 8 Toullier, § 514. Story on Agency, § 239.

Having thus stated our views generally concerning the law applicable to the case, it is necessary to consider the issue between the parties. The plaintiff alleges that the apparent mortgages on the property purchased at sheriff's sale by *Jacobs, do not in fact exist* upon the property, but have been extinguished altogether or in part, so that there will remain in the hands of *Jacobs* a sufficient sum of money to pay him, the plaintiff. The general issue pleaded by the defendants imposes the burthen of the proof on the plaintiff.

There is no charge of fraud or collusion between the defendants and *Hunter* made in the petition, nor do the facts authorise any such charge. It seems to us that everything which has passed between these parties is in accordance with the system of defence which the case presents. *Hunter* was not made a party to the suit, and his interest, in having the mortgage notes paid out of the property on which they were secured, is obvious, inasmuch as he was personally bound for them. It is not pretended that he ever directed any payments to be made on the mortgage besides those which were made, or that he ever in any manner dissented from the imputation of payments made by *Lambeth & Thompson*.

The plaintiff has offered, in support of his allegations, of the partial extinguishment of the mortgage notes, the commercial books of *Lambeth & Thompson*. The books of merchants are not evidence in their favor, but if used against them the whole must be taken together. Civil Code, art. 2244. The books show a certain course of dealing between the factors and their principal, which implies an agreement between them, and a change in the imputation of any of the payments, after it has been ratified and concluded by the debtor, would be to defeat that agreement. We are at a loss for a reason on which we can found any such right on the part of the plaintiff. *Lambeth & Thompson*, the creditors, had no such right; *Hunter* had not. It rested with him to pay the debt secured by mortgage, or not, as he thought proper, and he had the entire disposition of his funds in the hands of *Lambeth & Thompson*, and was at perfect liberty to direct their appropriaton as they have been applied.

It is proved that accounts were regularly rendered by *Lambeth & Thompson* BLOODWORTH to *Hunter*, generally at the end of every business season; that he was in the  JACOBS. city once or twice a year; and a witness, the book-keeper of *Lambeth & Thompson*, swears that he, the witness, was in the habit of showing *Hunter* his accounts on the books from time to time. *Hunter* never asked any explanation nor examined the accounts particularly; but of the rendition of the accounts and *Hunter's* acquiescence in them, there can be no reasonable doubt. Story on Agency, ss. 253, 254.

The counsel for the plaintiff have contended that, the general rule of ratification of the acts of an agent by the principal, does not apply to an imputation of payments; but we do not perceive any reason which would exempt an act of this kind from its operation, which we understand to be general in its relation to all acts to which the assent of the principal is necessary.

It is also urged that an agreement to make the imputations as they were made, or instructions to that effect, ought to have been shown affirmatively by the defendants. But the defence adopted by the defendants precludes the necessity of any such proof being made on their part; it rests upon an implied agreement, or a verbal agreement, to which there were no witnesses, which it is contended results from their books, which the plaintiff has made evidence, and the ratification of the doings of *Lambeth & Thompson*, the factors, by their principal, *Hunter*. Of the existence of any instructions or written agreement there is no evidence. It rested with the plaintiff to call for the correspondence with *Hunter*; but there was no obligation, under the issue and evidence, on the defendants to produce it without a call on behalf of the plaintiff.

The different sums of money which the plaintiff contends ought to have been imputed to the mortgage notes, the learned counsel consider as, on their reception, necessarily falling under the operation of the imputation of payments, by the effect of law, and of compensation, and particularly of the latter by reason of the debt for the sums received being an ordinary debt due by the factor to his principal. What might be the rule of compensation where money is received without any definite instructions or appropriation, or on the termination of the relations of principal and factor, it is not necessary to consider, under the conclusions that we have adopted as to the contract which the evidence in this case established between *Hunter* and *Lambeth & Thompson*, and under which the funds received ought to have been applied, and the application of which it is competent to neither party to disturb. The proceeeds of the crops were an irregular deposit in the hands of the factors, destined not for payment nor compensation, but to be returned on the order of *Hunter*; and *Lambeth & Thompson* were not authorized to apply them otherwise, nor are we at liberty to give any other direction to the contracts of the parties than they themselves have established in executing them.

"The product or substitute of the original thing, still follows the nature of the the thing itself so long as it can be ascertained to be such;" and the property of a principal entrusted to his factor for a special purpose, is still taken to belong to the principal, notwithstanding any change of form it may have undergone, so long as it can be identified and distinguished from all other property. Russel on Factors and Brokers, 273.

Admitting that, so far as relates to creditors, *Hunter* would have no privilege on account of this irregular deposit, and also admitting that the amount of the deposit would be lawfully compensable against his debts, it by no means follows

BLOODWORTH
*v.*
JACOBS.

that, *in re agendâ, Lambeth & Thompson* had any right to withhold it from the application which *Hunter* thought proper to make of it, provided they received the consignment under this condition. But where is the proof of any such agreement, it is asked ? The proof results from the ratification of *Hunter* of the gestion of his factors, and of the imputation of payments made by them in their receipts furnished to him, as also from the books of *Lambeth & Thompson,* which contain the history of transactions as executed by both parties, or by one with the assent of the other, which furnishes the best guide as to the true intent of both.

Concerning the stock transaction, it must be born in mind that the mortgage originating with it was one of those to which precedence was given by the plaintiff over his mortgage, and which he has insisted to have been extinguished in whole or in part, and on the evidence we can find nothing in its origin which will authorize us to disturb it. The principles which we have laid down appear to us to cover fully this transaction, and that in relation to the *Hills & Sinott* mortgage.

Under the issue between the parties and the evidence before us, we do not feel ourselves authorized to compel the defendant *Jacobs,* to pay the plaintiff's debt to the detriment of the outstanding mortgages.

The judgment of the Parish Court is therefore reversed, and the plaintiff's petition dismissed with costs in both courts.