## No. 995.

### CITY OF NEW ORLEANS vs. MRS. W. L. JACKSON.

Under and by virtue of the Constitutional Ordinance of 1879 and Act No. 49 of the Legislature of 1880, the interest, as well as the principal, of the taxes due the City of New Orleans prior to the first of January 1879, may be paid in scrips or other proper evidences of indebtedness of said municipal corporation.

But the judicial costs incurred in proceedings against the delinquents, are not included in the relief law, and must be paid in cash.

APPEAL from the Civil District Court, parish of Orleans. *Tissot, J.*

(Decided in Monroe by consent of parties.)

---

*J. Ward Gurley, Jr.*, Assistant City Attorney, for Plaintiff and Appellant.

*Sam'l P. Blanc*, for the Sheriff, on same side.

*J. O. Nixon, Jr.*, for Defendant and Appellee:

First—The concluding article of the ordinance of the Convention for the relief of taxpayers, includes interest and costs when it refers to taxes and licenses.

Second—The words taxes and licenses in Act 49 of 1880, includes interest and costs.

Third—Interest is an incident of the principal—and is governed by same rules as to its manner of payment. The Confederate Note case, 19 Wallace, 548. New Orleans vs. Clark, 5 Otto, 644; C. C. 2164, 2925.

Fourth—There is no conflict between Act 49 of 1880 and articles 46 and 47 of the State Constitution.

Fifth—The use of the word indebtedness in the Act 49 of 1880, show clearly that the intent was to cover principal, interest and costs.

Sixth—The ordinance of the Convention and the Act 49 of 1880, are highly remedial, intended for the relief of delinquent taxpayers, and should be so construed.

*R. H. Marr* on same side:

The delinquent, owing city taxes due prior to the first of January, 1879, is entitled to pay the aggregate amount due, principal and interest, in the valid indebtedness of the city.

The opinion of the Court was delivered by

POCHÉ, J.  In execution of three judgments in favor of the City of New Orleans, on taxes due by the defendant for the years 1875, 1876 and 1877, and for interests and costs, amounting together to a large sum, the defendant's property was seized by the sheriff.

She then made a tender in valid warrants of the city for the full amount claimed of her, but this tender was refused by the sheriff and the city, on the ground that payment of the interests and costs due on defendant's taxes could be received in cash only, and could not be legally made or tendered in city scrip.

Whereupon the defendant took a rule on the city and the sheriff in order to compel them to accept the tender as made by her, and they have appealed from a judgment making that rule absolute.  The solution of the questions arising in this litigation turns upon the proper interpretation of the ordinance adopted by the Constitution of 1879, for the relief of delinquent taxpayers, and of Act No. 49 of 1880, applying the principles of the ordinance to the settlement of taxes and licenses due to municipal corporations.  It is conceded by the city that the payment of the principal due on taxes exigible previous to the 1st of January, 1879, can be paid in valid evidences of indebtedness of the city; and the question is thus narrowed down to the inquiry whether the same mode of settlement is allowed for the payment of interests and costs.

The relief offered by the ordinance of the Constitution, to delinquent taxpayers of municipal corporations, was of a threefold character.

1st.  To remit all interests, costs, fees and charges due on taxes and licenses due prior to the 1st of January, 1879, to all delinquent taxpayers who should settle before the 1st of January, 1881.

2d.  To allow a discount of ten per cent from the date of payment of licenses and taxes to January 1st, 1881.

3d.  To allow the payment of all taxes and licenses before or after the 1st of January, 1881, to be made in scrip or other evidences of indebtedness of the municipal corporation.

It is urged and argued by the counsel of the city, that, as the last

clause of the constitutional ordinance, under which the settlement of taxes and licenses in scrip is authorized, contains no mention of, or reference to, interests, costs and penalties, which had been remitted to the delinquents for such settlements as were made during the year 1880, and which were revived as to all taxes and licenses not paid previous to January 1st, 1881, the conclusion is inevitable that the intention was to exclude interests and costs from the operation of the relief sought to be granted to delinquent taxpayers. An easy mode of discovering the intention of the Convention on this subject, is by considering the reasons which necessitated such a measure, and the object sought to be accomplished.

The evidence in this record shows that the number of delinquent taxpayers in New Orleans had reached in 1878, the alarming figure of 43,093, and that many of them owed taxes for every year from 1870 to 1878, with interest of ten per cent per annum from 1871.

In many cases the interests due on tax bills were nearly equal in amount to the principal of the tax, and few, if any, of the delinquents had the means, or could possibly realize the funds necessary to the settlement of these arreared taxes and accrued interests.

In consequence of epidemics which had devastated the city, of short crops, of decreased confidence in public affairs, and of other causes, the prosperity of the city had been suddenly checked, and business had gradually stagnated, until real estate had almost become a burden to its owners.

The heavy tax-liens which affected so much property owned by this army of delinquent taxpayers, had rendered this property unsalable, and had almost taken it out of commerce.

These facts were well known to the Convention, whose duty it was to find a remedy for the existing evil, and after mature deliberation that body adopted the ordinance under consideration, which was, doubtless, intended mainly to relieve the City of New Orleans of its financial embarrassments.

Experience had demonstrated to the members of the Convention the futility and the injustice of laws remitting to delinquents any portion of the taxes which they owed to either the State or municipal governments. Hence, they abstained from such a course, and prohibited the Legislature from the use of such an experiment in the future.

Knowing, on the other hand, that the floating indebtedness of the city and of other municipal corporations was fast accumulating, in the same proportion that the number of delinquents was daily increasing, the Convention allowed the payment of taxes in such indebtedness, with the double purpose of relieving the taxpayers and the creditors of the city and of other municipal corporations.

Now, as the amount of interests due by these delinquents is nearly equal in amount to the principal of their taxes, a fact which must have been known to the Convention, it is manifest that the exclusion of interests from the operation of the relief, would have destroyed the efficiency of the measure, and defeated the end proposed ; and that, therefore, such an exclusion could not have been contemplated by the Convention. It is clear to our minds that the interpretation contended for by the counsel for the plaintiff, is not in keeping with the reason which prompted the measure, nor with the object proposed.

It was well known to the Convention, that under our laws interest on a debt or moneyed obligation is an accessory to the capital, an incident of the main obligation, and an outgrowth of the principal ; and that all securities created, as well as all remedies given, to enforce the main or principal obligation, apply alike to accrued interests borne by the main obligation, resulting either from the effect of law or from the consent of parties.   And it is not a violent presumption to conclude that the Convention contemplated the inclusion of interests or accessories in using the words " taxes " and "licenses " in the last clause of the ordinance, which was intended as a great inducement to bring delinquents to the settlement of their arreared taxes.   Several provisions in our Civil Code and in our Code of Practice come to our assistance in holding that remedial legislation affecting the settlement of the principal of an obligation, applies to all interests which may be due on the same.

Thus, Art. 2925, C. C., provides that the release of the principal without any reserve as to interest, raises the presumption that it also has been paid, and operates a release of it.   In like manner will it be presumed that a mode of payment of the principal, created by law, without any reserve as to interest, will apply to the payment of the interest.

Pursuing the same spirit, our law, in Art. 157 of the Code of Practice, prohibits a creditor who has not claimed interest in an action on the principal, from claiming such interest in a separate action, as in such a case he will be considered as having remitted the interest.

It was, doubtless, in recognition of· these principles, that the city and the sheriff refused the whole tender made by Mrs. Jackson, while they acknowledged the legality of the tender in so far as the capital of the taxes due was concerned.

They knew that, under our laws, a settlement of the principal by litigation, would conclude the creditor against any future claim for the interests.

And thus our conclusion is justified by the very act of plaintiff, who, in refusing a settlement of its claim, unless it included the settle-

66

ment of interests, recognizes that the two are so intimately blended, as to be one and inseparable, and that all remedies affecting the one covers the other.

If the interest was so distinct from the capital of the tax due, as to be excluded from any legislation affecting the capital, without express reference to, or mention of, the interest, the city could without danger, have accepted the tender made for the payment of the capital, refused that made for the interests, and proceeded to enforce its lien, thus enhanced by a partial cancellation, as to the latter.

But counsel knew too well that such a course was impossible, for the reason that the law which grants the tax-lien and secures the interests as an accessory, does not mention interest which is covered by the lien only as an accessory of the principal, for the reason that a settlement of the principal would lead to the legal presumption of a settlement of the interest. And hence, they refused the whole tender, alleging " that a part of the tender being illegal, the whole fell;" a reasoning which also acknowledges that the capital and interests formed together a unit, or a whole indebtedness, which could not be disintegrated so as to allow a mode of settlement of one portion different from the manner of settling the other portion.

Hence, we conclude that plaintiff's counsel are in error in denying such a construction of the " true intent and meaning " of Act No. 49 of 1880, and in holding that, under such a construction, this act would be violative of the very constitutional ordinance which it was intended to invigorate and put into operation.

In our opinion, the Legislature in allowing delinquent taxpayers to settle their " indebtedness," which evidently embraces capital and interests, in scrip, correctly expounded the will and intention of the Convention, and the District Judge was correct in holding that the " interest follows the character of the principal, and that the constitutional ordinance which authorizes the settlement, in scrip, of licenses and taxes, necessarily embraces, in its operation, the settlement in the same mode of such interests as may have accrued on the principal obligation." D'Aquin vs. Coiron, 8 N. S. 622; Fisk's case, 14 An. 682; The Confederate Note case, 19 Wallace, 548; 5 Otto, 644.

Nothing in these conclusions militates with the provisions of Art. 46 of the Constitution which prohibits the enactment of local laws " remitting fines, penalties and forfeitures," etc., or those of Art. 57, denying to the Legislature the power of " releasing in whole, or in part, the indebtedness, liability or obligation of any corporation or individual to the State, or to any parish or municipal corporation therein."

The remedial laws now under consideration, do not purport any such release, but only provide for a special and exceptional mode of

collecting the whole of certain delinquent taxes, and the entire interests accrued thereon. But it is clear to our minds that such laws do not affect the settlement of judicial costs incurred by the city in proceeding against delinquent taxpayers; these costs do not form a part of the indebtedness due to the city, but are due by the defendants in suits to the proper officers rendering service in such proceedings, and hence these costs are due and exigible in cash. The judgment of the lower court, which does not discriminate in favor of such costs, must, therefore, be amended in this particular.

We are informed by appellee's counsel in his oral argument, and it is admitted by appellant's counsel, that since her first tender she has tendered, in cash, that portion of the taxes due by her, which under existing laws is appropriated to the payment of the premium bonds of the city, and this question is, therefore, eliminated from the present controversy.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended in so far as it allows the payment, in scrip or certificates of indebtedness, of judicial costs incurred in proceedings against the defendant; which costs are hereby decreed to be due and exigible in United States treasury notes, or cash; and that in all other respects said judgment be affirmed, appellee to pay the costs of this appeal.