VIRUET, PLAINTIFF AND APPELLANT, *v.* OLIVER & COMPANY, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Arecibo in an Action for Release of Mortgage.

No. 2132.—Decided February 14, 1921.

MORTGAGE — PAYMENTS — RELEASE — VERBAL AGREEMENT. — The conditions of a mortgage regarding the form of payment do not prevent a later agreement, verbal or otherwise, as to the application of the payments, and in this case it is understood that the later agreement is an explanation, affirmance or modification of the mortgage.

The facts are stated in the opinion.
*Mr. M. F. Rossy* for the appellant.
*Mr. A. Lens Cuena* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Benito Viruet brought suit to compel Oliver & Co. to execute a release and cancellation of certain mortgages alleged to have been paid.

After answer, cross-complaint and a trial on the merits, the court below dismissed the original action and rendered judgment in favor of Oliver & Co. for $3,895.12, together with interest, costs and disbursements, for reasons stated by the trial judge as follows:

"An examination of the pleadings of the parties and of the documentary evidence adduced by them shows that they concurred

in the existence, authenticity and amount of the mortgage credits which the complainant seeks to annul and the cross-complainant to recover, the material and perhaps the only question raised being therefore whether the deliveries of coffee made by Benito Viruet to the firm of Oliver & Co. from August to December of 1914 were in part payment and discharge of the mortgage credits, as contended by the complainant, or whether they applied on an account created by previous arrangement between Benito Viruet and Oliver & Co., as claimed by the defendant firm, cross-complainant herein.

"The documentary evidence of both parties shows that the property was encumbered by the following mortgages:

"(*a*) A first mortgage to secure the payment of $1,396.08, created in favor of the firm of. Oliver & Company, payable in instalments and due on December 31, 1915.

"(*b*) A second mortgage in favor of Oliver & Company to secure a loan of $500 made for the financing and cultivation of the said property, due and payable during the month of October, 1913, the debtor agreeing to deliver to the creditor firm all the coffee produced by the said property during the year 1913, a subsequent agreement having been made 'by the parties on December 22, 1913, to extend the date of payment to October 31, 1914, inasmuch as debtor Viruet was not able to pay the said $500 to Oliver & Company.

"(*c*) A third mortgage in favor of Oliver & Company to secure a loan of $1,000 to the said Viruet for the financing and cultivation of the said property, due and payable on October 31, 1914, debtor Viruet covenanting to deliver to Oliver & Co. all the coffee produced by the said property in the year 1914 in payment of the $500 mentioned in the preceding clause and of the financing loan of $1,000 to which this clause refers.

"After reviewing and considering the rest of the documentary evidence, embracing letters, receipts and orders, as well as the oral evidence introduced and examined at the trial, the court makes the following findings of fact:

"1. That the mortgage credit of $1,396.08 matured on December 31, 1915, and was not paid.

"2. That the financial credits of $500 and $1,000 matured on October 31, 1914, and were not paid; and, as corroborated by Viruet's own statement, that the matured agricultural loan of $550 was likewise not paid by the last named to Oliver & Co.

"3. That subsequent to October 31, 1914, and on or about November 1 of that year, Benito Viruet, being in need of money to

harvest his coffee crop, etc., made an oral agreement with his creditors, Oliver & Company, whereby the latter were to continue to make him advances so that he might harvest his coffee and that the value or proceeds of the coffee turned over by him should be credited to the current merchandise and loan account and the surplus applied to the payment of the agricultural credits or mortgages.

"4. That said account current was not paid by Benito Viruet and therefore there was no surplus to apply to the payment of said credits.

"5. That a statement of said account, showing a balance of $444.58, was handed to Benito Viruet in February, 1915, and he not only made no objection thereto, but, according to the testimony of Francisco Jaume, expressed his conformity therewith, referring to the balance; and that Clodomiro Candelaria testified that Viruet told him that he wished to sell his property in order to settle Oliver & Company's account and pay off the mortgage.

"To warrant the cancellation prayed for by Benito Viruet in his complaint, the plantiff must show that he has paid the mortgage debt and agricultural advances, to secure which the property mentioned in the complaint was mortgaged, and hence that the indebtedness with which the property has been charged has been liquidated, and far from doing this, not only has Viruet failed to show that he paid off any of the loans made him by Oliver & Co., but also appears as still owing to the latter the balance of the account current opened to enable him to attend to the expenses of cultivation and the harvesting and delivery to them of the products in payment of the amounts due and unpaid by debtor Viruet.

"The debtor Viruet having thus failed to pay any of the mortgage credits, he cannot be heard to ask for their cancellation.

"Plaintiff Viruet has attempted to throw doubt upon the scope and the real object of the agreement for the opening of the account current. Nevertheless, the facts shown previously, contemporaneously and subsequently thereto, namely: the former loans for financing purposes renewed at their maturity and nevertheless still unpaid; the heterogeneous character of the account, embracing as it does, advances of money and furnishing of wares, provisions, merchandise, etc.; the receipt and acquiescence in the statement of account showing a balance; the statements of debtor Viruet and Francisco Jaume regarding conformity with a balance, and the testimony of Clodomiro Candelaria as to the desire of the debtor to sell his property in order to pay Oliver & Co. the account and the mortgage,

and the statement made to Angel Marengo, show that Viruet did not comply with the obligations contracted by him in favor of the cross-complainant and that he failed to pay the balance of the account charged at his own request with the money, provisions and merchandise called for in his requisitions and orders, which were introduced in evidence and identified by him at the trial.

"The cross-action for debt is based on the three credits arising out of the three financing loans and the agricultural loan to which we have referred in the facts set forth at the beginning of this opinion and also in a statement of account containing particulars of goods sold and delivered to the cross-defendant which were proved in great detail by the cross-complainant.

"The stipulations set out in a public instrument do not prevent the parties from covenanting in another form what they may deem convenient and in this case it is found that their final agreement is an explanation, ratification or modification of the said instrument. Judgment of the Supreme Court of Spain of April 6, 1888.

"The debts contracted by capacitated persons are valid when shown to exist by any kind of evidence recognized at law, and the courts should avoid, so far as possible, that the right of one of the parties be subordinated to the will of the other.

"The plaintiff has not proved his right to have the mortgage credits cancelled as prayed for, inasmuch as he has not shown that he has paid said credits; and since the principal obligations namely, the credits, have been neither released nor extinguished, the debtor cannot be heard to claim their cancellation.

"On the other hand, the cross-complainant has established the existence and validity of the credits he claims, by the public documentary evidence adduced by both parties; and after weighing the probatory force of the testimony of the witnesses in connection with the other evidence regarding the account current presented by the cross-complainant, the court finds that the obligation on the part of the cross-defendant to pay the balance of said account has been shown, since, the correctness of such balance has not been questioned either in the pleadings of the cross-defendant nor attacked by the evidence."

There is no assignment of errors separate or otherwise, but the appellant, in the course of a thirty-eight page brief, discusses the following "legal questions":

"1. Could the firm of Oliver & Company apply the proceeds of

the coffee delivered to it by Benito Viruet during the 1914 crop to the payment of the account current of said Viruet instead of to the payment of the three mortgages, one for $1,396.08 created by deed of May 20, 1912; another for $500 by deed of December 12, 1912, and still another for $1,000 by deed of December 22, 1913, aggregating $1,896.08, it being stipulated in the third clause of the last of these deeds that the proceeds of such coffee were to be applied to the two last loans and the first mortgage debt enjoys priority over all others, especially when first in point of time, since it is dated May 20, 1912, and matures in 1913, 1914 and 1915?

"2.. What was the estimated price of the coffee agreed on between the creditor and debtor?

"3. The creditor firm seeks to recover from Viruet in this action the balance of an account current which it particularizes in its cross-complaint."

The first, as propounded, obviously ignores the finding of the court below as to the verbal agreement between the parties in regard to the opening of the new account and the application of payments to be made thereafter.

The second is purely a question of fact, as is also the third, save in so far as it depends on the solution of such questions of law as are vaguely suggested in the first.

Indeed, whatever merit is to be found in the whole brief, if not the only matter seriously suggested, lies in the exhaustive analysis of the testimony given at the trial. And upon this phase of the case it will suffice to say that the facts as found by the trial judge are well established by the evidence.

In presenting the first of the three questions submitted the appellant refers to sections 1221, 1223 and 1234 of the Civil Code as indicating, among other things, that a public writing is indispensable to the modification of the provision in a mortgage as to the manner of payment. The decision of the Supreme Court of Spain of April 6, 1888, relied upon by the trial judge, is neither criticized, distinguished, discussed nor even mentioned, and there is no citation of any other authority on this point. In the same way, on the ques-

tion of "preference" as between the several mortgages, the written contracts for agricultural advances, and the indebtedness upon the account subsequently opened in accordance with the terms of the later oral agreement in regard to such further extension of credit, reference is made to sections 1824, 1825, 1828 and 1830 of the Civil Code as amended by the Law of Agricultural Advances, approved March 10, 1910.

In order to meet this line of argument, appellees cite sections 1221, 1222, 1225, 1245, 1246 and 1140 of the Civil Code, together with decisions of the Supreme Court of Spain of July 4, 1899; October 19, 1901; June 18, 1902; May 11, 1903; January 13, 1904; January 18, 1905; July 8, 1904; November 14, 1904; February 4, 1905; February 9, 1907; June 14, 1907; July 8, 1908, and April 17, 1909, in connection with *Abella* v. *Antuñano*, 14 P. R. R. 485; *Asencio* v. *Alvarez*, 10 P. R. R. 102; *Ríos* v. *Vázquez*, 17 P. R. R. 644; *Vázquez* v. *Medina*, 17 P. R. R. 96, and the commentaries of Manresa on the corresponding articles of the Spanish Code.

And without further discussion of the question so sought to be raised, we may refer in passing to *Torres* v. *Lothrop*, *Luce & Co. et al.*, 16 P. R. R. 172, 231 U. S. 171; Wigmore on Evidence, volume 4, page 3441, section 2441; *idem*, page 3467, section 2455; *Bloodworth* v. *Jacoba*, 2 La. Ann. 24; *Merchants and Farmers' Bank* v. *Hervey Plow Company*, 14 Southern Rep. 139, and *Flower & Kenney* v. *O'Bannon*, 33 La. Ann. 1042.

The burden is upon the appellant, who seeks to reverse the deliberate judgment of a trial court, to establish the grounds upon which he relies, and we need not speculate upon the merits of questions submitted without citation of authority as more or less plausible inferences to be drawn from specified sections of the code which, upon final analysis and after an exhaustive and independent investigation conducted by this tribunal, might or might not disclose by way

of analogy or otherwise some solid basis for the theory so suggested.

The judgment appealed from must be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Del Toro and Aldrey concurred.