Plaintiff is in the business of furnishing lumber and building materials. Defendant, Joseph O. Helm, is a contractor engaged in building construction. The co-defendant, Security Building Loan Association, entered into a contract with Helm for the construction by Helm of certain work. The contract, though reduced to writing, was not recorded, and no bond was required.
Plaintiff seeks to recover from the contractor, Helm, and the owner, Security Building Loan Association, in solido, the amount of $679.40, claiming this to be the balance due on a bill for lumber and materials furnished and used in the construction of the work undertaken, including fee of $4 for recordation of plaintiff's materialman's lien and privilege, said recordation having been made on July 18, 1940.
Service of citation and petition was never made upon Helm, he being a non-resident. The defendant, Security Building Loan Association, pleaded a general denial and in the alternative pleaded payment of all amounts due by it as a result of its contractual obligations.
Judgment was rendered dismissing plaintiff's suit, from which this appeal is being prosecuted.
On the trial below plaintiff objected to the introduction of evidence in support of the plea of payment urged by defendant in its answer. The trial judge referred this objection to the merits. Plaintiff now re-urges the correctness of its objection, contending that defendant's failure to have particularized its plea of payment, rather than relying on a general plea to that effect as is here resorted to, precludes it from submitting proof of the details of this special defense.
We think that defendant's answer was sufficient to inform plaintiff and afford it full notice of the defense that was to be urged. It follows that the ruling of the trial judge in referring the objection to the merits and admitting the evidence was correct.
There is no dispute between the parties as to the quantity and value of the materials ordered, save two minor exceptions, nor either as to the delivery and use thereof in the works under construction. The items excepted to are represented by two invoices dated May 13th and 20th, 1940, respectively, for materials, aggregating the sum of $9.89, and which, defendant urges, was not delivered or used in its works. Defendant contends that the last item delivered on account of the contract was that of May 10, 1940, and that the account sued on should be correspondingly reduced.
The record contains definite proof of the correctness of these two items. It is shown that they were ordered by the contractor, or his duly authorized representative, the materials delivered in accordance with the order, and the contractor charged therefor, all in connection with defendant's job. We find no evidence that the materials so ordered, delivered and debited were not actually used in the construction of defendant's works, and the record discloses that the defendant made no effort to sustain its position. Of necessity, we are convinced of the correctness of the account as sued upon.
Defendant contends that it has paid Helm, the contractor, the full amount due under its contract. Conceding that it has done so, such payment does not relieve it from liability to a materialman for materials furnished and for which no payment has been received, for the reason that, under the circumstances set forth in connection with its contract, the defendant stands in the shoes of the surety and the measure of its responsibility is as to the same extent as a surety would have been. Act No. 139 of 1922.
The testimony reveals that plaintiff and Helm had been doing business together for *Page 650 
at least three years and that Helm had what may be called a "general running account" with the plaintiff covering various jobs. At the time that defendant's contract was being executed and the used materials debited on Helm's account, Helm owed several balances on other completed separate jobs. It is shown that on May 25, 1940, the balance due plaintiff by the contractor on the latter's open account in connection with defendant's contract was $675.40. It also appears that the contractor's debit balance on his open account, other than that covering supplies for defendant's works, amounted to $800, or a total debit balance on open account in the amount of $1,475.40. It is shown that on May 25, 1940, a payment by check of $800 was made by Helm in person to the plaintiff. It is also shown that on receipt of this payment of $800, it was used in liquidation of the oldest debts of Helm — that is, the balances due on jobs earlier than that of defendant, thereby leaving unpaid the amount due for material furnished to and used in defendant's works.
It is defendant's contention that this particular payment of $800 should have been imputed to defendant's job because plaintiff had been directed to do so by virtue of the specific notation appearing on the check. It is shown that the $800 check bears the notation "816 Baronne St. Job", admittedly the location of the works being constructed for defendant.
Our laws concerning the imputation of payments clearly and precisely provide that the debtor has first the right to make the imputation. If he does not exercise this right, it then appertains to the creditor. If neither makes the imputation, the law makes it for them; and in all cases the imputation takes place in one of these modes at the time payment is made, it being understood that where the imputation is made by the creditor, the debtor is always protected against surprise as well as against fraud. Articles 2163-2166, R.C.C. Article 2166 provides that "when the receipt bears no imputation, the payment must be imputed to the debt, which the debtor had at the time most interest in discharging, of those that are equally due, otherwise to the debt which has fallen due, though less burdensome than those which are not yet payable. If the debts be of like nature, the imputation is made to the debt which has been longest due; if all things are equal, it is made proportionally". It is evident, therefore, that unless the debtor (Helm) had declared to the plaintiff, in some manner, what debt he meant to discharge by his payments, the application of the payment in question to the oldest accounts that were then due under the general running account carried on between the parties was proper.
The question of fact presented, then, is whether or not, under the circumstances, the $800 paid by the contractor to the plaintiff should be imputed to the oldest items of Helm's account, or imputed primarily to the debited items furnished on defendant's job.
Defendant produced the check of $800, made payable to the order of plaintiff and bearing the notation "816 Baronne St. Job". Defendant contends that this constituted a direction and declaration on the part of Helm as to how this payment was to be imputed and that the check is a receipt, which bears the imputation. On this question of fact we find a serious conflict in the testimony with respect to whether or not this notation was on the check at the time it was received by plaintiff and passed for payment or collection through the bank.
L.A. Sander, credit manager of plaintiff, testifies most positively that he had been endeavoring to obtain payments on Helm's account long prior to the payment of the $800; that on May 25, 1940, Helm called at his office and, after a discussion between them as to his various accounts which were long past due, he, Sander, finally agreed to accept a payment of $800 "on account," with the specific understanding that the amount so paid would be applied to the general account and particularly in liquidation of those longest due. He further testified that Helm thereupon presented him a blank check, though he is unable to recall whether or not its date was already written in. He further states that he thereupon proceeded to write in the name of the payee and the amount in both figures and words, whereupon he handed the check to Helm, to which the latter affixed his signature. He states most positively that when this check was written by him and signed by Helm and, in turn, accepted, it did not bear the notation which is now found on it and that, immediately upon receipt of the check, Helm's account was credited in accordance with their understanding and agreement as to how the funds would be applied. It is further shown that immediately after the check had passed for payment and the funds were collected through the bank, Sander *Page 651 
addressed a letter to Helm, reading, in part, as follows:
"May 28, 1940.
"Mr. J.O. Helm, "901 Newton, "Gretna, La.
"Dear Mr. Helm:
"In order to keep our records straight I wish to confirm imputation of check for $800.00 you gave the writer Saturday last as to how it was applied on your account, which is as follows:
(Here appears the list of accounts — other than defendant's — toward which the check was applied)
"If this is not strictly according to your wishes, please let me know immediately by return mail."
Helm admits having received this letter in due course and that no protest or objection was made thereto.
On the other hand, we have the testimony of Helm, the contractor, who testified that on May 25, 1940, he directed his son to write on a blank check the date "May 25, 1940" and the notation "816 Baronne St. Job"; that he took this check to plaintiff's office and, after informing Sander of his inability to pay more than $800 on his account, Sander wrote in the name of the payee and the amount of the check, to which Helm affixed his signature.
Carl Helm, the contractor's son, testifies that he personally wrote in the date on the check and the notation appearing thereon and handed it to his father for delivery.
We believe that Sander's testimony reflects the true facts as to what occurred. He was the one who wrote the name of the payee and the amount to be paid on the check and naturally would have had every good reason to be impressed with the way in which the check was handled, its object, and the purposes to which it would be applied. Besides, he had endeavored for some time previous to obtain payment from Helm on his long past due account and undoubtedly there must have been, as Sander testified, a full discussion of this account, with its various long past due items. In this latter respect our conclusions are supported by the fact that, though the balance due on defendant's job amounted to $675.40, the check given in payment amounted to $800. One would naturally inquire as to why a payment of $800 would be made on a particular job when the balance due in connection with that job was shown to be considerably less than the amount of the payment made. Helm's explanation of this unbusinesslike method of liquidating specific obligations falls in the light of his conduct following his receipt of plaintiff's letter confirming the transaction acted upon.
What we deem decisive of the issue is the letter above quoted and written by plaintiff's credit manager to Helm, three days following the payment in question. Helm admitted its receipt and further admitted making neither verbal nor written objection or protest. Obviously, the contents of this letter clearly reflect the good faith of plaintiff in connection with the receipt and application of the proceeds of the check, especially when it is considered that the letter was written at an unsuspicious time. Here we find plaintiff specifically notifying Helm of the imputation of these proceeds to particular accounts, confirming, undoubtedly, what previously had been agreed upon between the parties. Furthermore, Helm was therein requested to immediately inform the plaintiff if the imputation so made did not accord with his wishes. To this request Helm remained silent. Unquestionably, the letter reflected the true understanding and agreement had between the parties. By such silence when objection was invited Helm's conduct was tantamount to an original imputation of the payment by himself, or, at least, a ratification and approval of the imputation concluded by plaintiff. The imputation effected by plaintiff and the notification thereof to Helm and the latter's tacit acceptance and ratification, furnishes the best and most decisive guide as to the true intent and understanding of the parties.
In our opinion the payment of $800 must, under the circumstances recited, be held to have been correctly imputed to the oldest items on Helm's account. It is well settled that general credits on open accounts stand as payment on the oldest items on such account unless some other imputation be clearly indicated. Forrey v. Strange, 158 La. 941, 105 So. 21; Harman 
Stringfellow v. Legrande, 151 La. 253, 91 So. 726; Houeye v. Henkel, 115 La. 1066, 40 So. 460; Sleet v. Sleet, 109 La. 302, 33 So. 322; Dinkgrave's Succession, 31 La.Ann. 703.
In the case of Electrical Supply Company v. Freeman, Inc., et al., 178 La. 741, 152 So. 510, 512, the Supreme Court said: "* * * if the debtor do not impute *Page 652 
his payments when made, the creditor may do so, and, if he makes such imputation and informs the debtor thereof by account rendered which the debtor receives without objection, he cannot afterwards question the imputation. Flower King v. O'Bannon, 43 La.Ann. [1042], 1043, 10 So. 376; McLear [ Kendall] v. [Succession of] Hunsicker, 30 La.Ann. 1225; Robson Allen v. McKoin, 18 La.Ann. 544; Dunbar v. Bullard, 2 La.Ann. 810; Bloodworth v. Jacobs, 2 La.Ann. 24; Baker v. Smith, 44 La.Ann. 925, 11 So. 585."
It is further well recognized that, after a debtor accepts a receipt in which the creditor has made an imputation, the imputation becomes irrevocable unless there has been fraud on the part of the creditor. Bloodworth v. Jacobs, 2 La.Ann. 24; Grand Lodge v. Murphy Construction Company, 152 La. 123, 92 So. 757; Rev. Civil Code, articles 2163, 2166. In the case at bar, the good faith of plaintiff is not questioned.
For these reasons, it is ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that there now be judgment in favor of plaintiff, Madison Lumber Company, and against Security Building Loan Association, defendant, in the full sum of $679.40, with legal interest thereon from date of judicial demand and with full recognition of plaintiff's materialman's lien and privilege on the following described property, to-wit: "Lot 18 in Square 235 of the First Municipal District of the City of New Orleans, State of Louisiana, which said square is bounded by Carondelet, Baronne, Julia and St. Joseph Streets. Said property bears the municipal number 814-816 Baronne Street."
All costs to be paid by defendant.
Reversed. *Page 701