**POLLAK v. KAHN (KAHN, Intervener).**
No. 2635.

District Court, W. D. Louisiana, Monroe Division.

Sept. 9, 1936.

Irion & Switzer, of Shreveport, La., for plaintiff.

Dhu Thompson, of Monroe, La., for defendant.

## DAWKINS, District Judge.

On May 29, 1931, James M. Yarborough purchased certain improved property in the city of Monroe, and gave therefor a number of vendors lien notes, maturing two years after date, secured by a special mortgage. One of these, for the sum of $7,800, was given prior rank in the mortgage, and the others were subordinated to it. This note became the property of intervener, Mrs. Rebecca Kahn, and she loaned it to her son, Sidney Kahn, as collateral security to his own note for the sum of $4,100 borrowed from the estate of H. C. Cole, on May 26, 1931. The other notes of inferior rank were acquired by Mrs. Emma Sugar. Kahn, over a period of more than two years, collected sums of money from Yarborough and paid the interest monthly on his own note, the last credit being paid on July 15, 1933.

Herbert Rosenheim, as the agent and representative of Mrs. Sugar, being convinced that the property was of insufficient value to pay the mortgage notes, and fearing that the one having priority might be foreclosed, determined to acquire, for Mrs. Sugar, the Kahn principal note, with the said first mortgage note as collateral. This he did by borrowing temporarily the funds and paying the Cole estate the full amount of the principal, $4,100 and accrued interest, through its legal representative, Central Savings Bank & Trust Company of Monroe, who delivered both obligations to him by indorsement in blank and "without recourse." This took place some time after the maturity of both notes. Rosenheim says that finding Mrs. Sugar did not have the funds available to cover the purchase, he got in touch with the plaintiff herein, Mrs. Bernice S. Pollak, daughter of Mrs. Sugar, who furnished the money to repay Rosenheim. He swears that he turned both the principal and collateral notes over to Mrs. Pollak. However, he continued to act as agent for Mrs. Sugar and her said daughter, whom he had represented in business matters in Monroe for some time. Sums thereafter were collected from Yarborough monthly to January, 1935, aggregating $800; and although Yarborough at first requested that these payments be applied on the $7,800 prior lien note, Rosenheim says he declined to do so, and Yarborough did not insist but apparently acquiesced in Rosenheim's action in crediting the payments upon the second lien notes held by Mrs. Sugar.

On May 24, 1935, Sidney Kahn having failed to pay the interest on his said note, Mrs. Pollak brought this suit to recover the amount thereof with recognition of her pledge upon the $7,800 note of Yarborough. In the meantime Kahn had obtained a discharge in bankruptcy. He answered, pleading his discharge, and attacking the validity of the transfer of his note and the pledged collateral of his mother by the Cole estate. He also pleaded legal tender.

Mrs. Rebecca Kahn intervened, claiming ownership of the first mortgage note and likewise attacked the said transfer.

It is conceded that Herbert Rosenheim was the authorized agent and representative of both the plaintiff, Mrs. Pollak, and her mother, Mrs. Sugar, and that they approved his action in this matter. It is also conceded that no personal judgment can be obtained against Sidney Kahn because of his discharge in bankruptcy, except to the extent necessary to sustain rights in rem against the collateral note.

The defendant and intervener insist that the language of the contract of pledge to the Cole estate made is unassignable. This document reads as follows:

"I hereby deposit and pledge with the Estate of H. C. Cole, a mortgage note dated 5/29/31, signed by J. M. Yarborough, for $7,800.00, payable to his own order and endorsed in blank, drawing interest at eight percent per annum from

date, due on or before two years, interest payable monthly, paraphed by George Lester, Notary Public.

"This deposit and pledge is made to secure a note of $4,100.00, signed by my son, Sidney Kahn, dated 5/29/31, due on or before two years, interest from date, interest payable monthly. Said collateral to remain so pledged until withdrawn by me, with consent of the Estate of H. C. Cole.

"Mrs. Rebecca Kahn."

Ordinarily, a pledge of this type is accomplished by attaching the collateral to the principal note, but in this instance, it appearing that the former was owned by another, the bank, as representative of the estate, thought it best to have executed a formal consent and acknowledgment by Mrs. Kahn. It is the last sentence of this pledge which plaintiff says prevented it from being transferred. No pertinent authority has been cited by counsel to sustain that contention. It contains no promise of surrender but was to be held by the estate to secure the debt so long as was deemed necessary and there was nothing otherwise making either the principal note with the collateral, unassignable. I think it could be and was legally transferred.

■ I also think either Mrs. Sugar or Mrs. Pollak had the legal right to acquire the Sidney Kahn note with its accessory obligation, the pledge of collateral. However, if either of them did so, they stepped into the shoes of the Cole estate, assuming, along with the rights, the obligations of that pledge. The pledgee has the option of collecting, or not, the collateral or the interest thereon; but when he does so he must apply the same to the discharge of the obligation for which the pledge is given, as required by article 3170 of the Louisiana Civil Code, reading as follows: "Pledged credit becoming due—Collection. —If the credit which has been given in pledge becomes due before it is redeemed by the person pawning it, the creditor, by virtue of the transfer which has been made to him, shall be justified in receiving the amount, and in taking measures to recover it. When received, he must apply it to the payment of the debt due to himself, and restore the surplus, should there be any, to the person from whom he held it in pledge."

See also article 3168, which provides: "Fruits of pledge—Ownership.—The fruits of the pledge are deemed to make a part of it, and therefore they remain, like the pledge, in the hands of the creditor; but he can not appropriate them to his own use; he is bound, on the contrary, to give an account of them to the debtor, or to deduct them from what may be due to him."

■ The word "fruits" includes interest on money. La.Civ.Code, art. 545. If Mrs. Pollak had personally collected the money which was paid to Rosenheim as her agent, she certainly could not have turned it over to her mother, but under these provisions of the law was bound to credit it on Kahn's obligation. What she could not do her agent could not do. As stated above, he was acting in the dual capacity of agent for the plaintiff and her mother, and could not take advantage of this situation to defeat the superior rights of Sidney Kahn and his mother, by having payments made on this collateral credited to the inferior mortgage notes. Kahn was in reality the debtor making these payments by use of the collateral, with his mother's consent, and I think had the right to say how they should be applied. He consistently insisted upon their going to the discharge of his note, which was the only obligation owned by Mrs. Pollak; but her agent attempted to divert them to Mrs. Sugar, whom he also represented. This, I think, was beyond his power. See Burbank v. Buhler, 108 La. 39, 32 So. 201.

■ I do not think the attempted tender was effective. It is not claimed that more than $4,100 was tendered on April 10, 1935. The last credit of interest on Kahn's note, which bore 8 per cent. per annum, was July 15, 1933, and a period of one year, eight months, and twenty-five days had expired from the last payment, when the tender was made. Hence, there had accrued $568.78 of interest. Adding this to the $4,100, the principal of the Sidney Kahn note, makes $4,668.78. Deducting from the latter figure the $800 paid monthly through January, 1935, leaves $3,-866.78. In the meantime, suit had been filed on May 24, 1935, and the 10 per cent. attorney's fees stipulated in Kahn's note, or $386.68, had become due, which, added to the remaining principal, makes a balance of $4,255.64, not counting the accrued costs. It is clear, therefore, that the amount tendered, to wit, $4,100, was insufficient and therefore ineffective to protect defendant against the payment of sub-

sequent costs, which is the only effect of a tender.

My conclusion is that plaintiff is entitled to recover judgment in rem upon the note sued on for its face value, with interest at 8 per cent. from July 15, 1933, less the sums paid by Yarborough, aggregating $800, credited thereon as of the date of each payment, respectively. She is also entitled to recover 10 per cent. upon the net balance of the note, as attorney's fees. She should also have judgment, recognizing her lien and pledge upon the mortgage note of J. M. Yarborough for $7,800, dated May 29, 1931, and maturing two years after date.

Proper decree should be presented.