No. 14,052.

EDWARD W. BURBANK VS. CHRISTINE BUHLER.

SYLLABUS.

1. *Three* partners of a commercial firm mortgaged real estate in which they each had an equal interest to secure a debt due to "A," for which they had executed their joint several solidary notes individually *and as partners.* "C" (one of the partners) dying, the survivors bought out his partnership interest, and his interest in the mortgaged property, assuming this particular debt and all outstanding liabilities of the firm. They formed a new partnership and borrowed additional amounts from "A," part of which they secured by second mortgage on the entire property and part of which was unsecured. In each of the special mortgages the mortgagors stipulated to take out five policies on the property mortgaged, to the extent of the debt, and transfer the same to the mortgagee as collateral. The property was destroyed by fire. Policies were held at that time by the mortgage creditor as collateral to an amount in excess of the first mortgage debt, and the owners held additional policies on the property which they had not transferred. The proceeds of all the policies were turned over to the creditor, who imputed the insurance money to an amount in excess of the first mortgage to the payment of the unsecured indebtedness, returning the notes evidencing that indebtedness to his debtors, who received them without objection, though without consenting. The creditor then foreclosed the first mortgage notes and bought in the property, and the price being insufficient to pay the same, brought suit against "C's" heir for the balance. *Held*—that the insurance money should not have been diverted to the payment of the unsecured indebtedness, but applied to the payment of the first mortgage notes and the effect of this division was *quoad* "C's" heir, to extinguish the notes.

2. The rules in the Civil Code (Arts. 2163 *et seq.*) govern in the settlement of accounts between a creditor and debtor, but they are not to be applied necessarily where the interests of other persons are involved.

A PPEAL from the Civil District Court, Parish of Orleans— *King, J.*

The plaintiff alleged in his petition that he was the owner of two promissory notes dated January 10, 1887, payable respectively four and five years thereafter, each for the sum of five thousand dollars, with interest at eight per cent. per annum from date, made jointly, severally and *in solido* by Joseph Buhler (since deceased), Frederick G. Ernst and Felix Ernst, Jr., to their own order, and by them endorsed, on which notes the interest was paid by the makers up to the 10th of

January, 1898; that by act of January 10, 1889, before Wharton Collens, notary public, payment of said notes, principal and interest and attorney's fees in case of suit was secured by special mortgage on certain property mentioned therein; that said notes not having been paid in whole or part or interest thereon except up to January 10, 1898, he caused executory process to issue upon said mortgage notes and the property mortgaged to be seized and sold to satisfy the amount in principal and interest, owing and unpaid upon said note, together with the unpaid and long past due principal sum of ten thousand dollars and accrued interest due and owing upon another certain promissory note held by him, dated May 6, 1896, payable two years thereafter, drawn by Frederick G. Ernst and Felix Ernst, Jr., and the commercial firm of Ernst & Co., composed of the said two parties, which note was also in a notarial act of that date secured as to payment, principal, interest and attorney's fees, by special mortgage upon the same identical property mortgaged in the act before Collens.

That under the executory process the property was seized and sold on the 26th of July, 1900, and after the payment of the costs, attorney's fees and taxes, there remained out of the proceeds of sale, the sum of eight thousand three hundred and fifty-eight and 3-100 dollars ($8,-358.03), to be applied to and which sum had been applied to the extinguishment of said notes of five thousand dollars each and accrued interest. That by said application of said sum in payment the said note described as payable four years after its date, to-wit, the 10th of January, 1887, had been satisfied as of July 26, 1900, and that there remained due upon the other of said notes, payable five years after its date, the sum of thirty-six hundred and seventy-nine 74-100 dollars ($3679.74), together with interest from the 26th of July, 1900. That Joseph Buhler died in the year 1895, and his wife (born Louisa Faessel) died in the year 1896; that they left but one child, Christine Buhler, issue of their marriage; that said Christine, as yet a minor, was fully emancipated in October, 1898, by judgment of court and was, upon her own petition, recognized as the sole heir of her father and mother, accepted their succession purely and simply, and was sent into possession thereof, and thereby became obligated to pay the said notes and any amount due thereon. In view of the premises he prayed for citation and judgment against her for $3679.74, with eight per cent. interest thereon from July 26th, 1900, until paid.

Defendant answered, and after pleading the general issue admitted that she was the child and sole heir of Joseph Buhler and his deceased wife, Louisa Faessel; that she had been emancipated and sent into possession of their estates. She admitted the signature of her father upon the two notes. She averred that her father died the 17th of May, 1895, and the firm of Ernst & Co., of which he was a member, was thereby dissolved, and in the same year the interest and share of respondent of her deceased father in the real estate property, upon which the said mortgage bears, was sold and transferred to the surviving partners, Fred G. Ernst and Felix G. Ernst, Jr., which sale, so far as respondent was concerned, was consummated under proceedings held in the succession of her father, in which accounts were filed and the liquidation of the firm of Ernst & Co. established and the said accounts were submitted to a family meeting, of which family meeting the plaintiff was a member.

That part of the consideration of said transfer was the assumption by said Fred G. and Felix Ernst, Jr., of the mortgage notes herein held by the plaintiff, and this said sale was made with the knowledge and consent of the plaintiff, who thereafter dealt with Ernst & Co., acknowledging them as his sole debtors, and when he foreclosed upon the notes aforesaid in the proceedings referred to in his petition, he alleged that the property was the sole property of the defendants in that case and made no claim against respondent, and respondent therefore averred that said Burbank consented to a change of debtors and released respondent by his said conduct.

That the property mortgaged to secure said notes was worth at the time of the mortgage and at the time of the death of respondent's father and at the time of the transfer aforesaid, the sum of fifty thousand dollars or more. That the real estate was improved with a large and valuable mill property and machinery. That the plaintiff's mortgage upon the same was protected by policies of fire insurance for an amount in excess of forty thousand dollars.

That after the transfer aforesaid, to-wit: on or about the 29th of June, 1892, the real property was destroyed by fire and the plaintiff collected from the insurance companies the full amount of his outstanding debt, including the two notes herein proceeded upon, and the said debts were extinguished by the said payments by the insurance companies and said insured property was not rebuilt. That any farther

transactions between him (the plaintiff) and the said Fred G. Ernst and Felix G. Ernst, Jr., with regard to the insurance money, could not revive the said mortgage or the obligations of respondents in the premises and respondent charges that at the time of the alleged foreclosure herein the said mortgage notes were not valid existing mortgage binding upon respondent's deceased parents or upon respondent.

That the conduct of the plaintiff in the premises if maintained in the present case would result in large and serious loss to respondent, who was, during a part of the delay which has elapsed, a minor and who had never been consulted by the plaintiff as to his actions, and who had been injured by his conduct, and she pleaded the estoppel of his aforesaid acts as a bar to the recovery of the sum herein sued for.

That plaintiff foreclosed upon the said notes in midsummer and purchased the property in question for a song, and not for a real value. That he had refused to release his debt upon the property for a much larger sum than realized at the sheriff's sale, and the price obtained in midsummer for said property was not its just and fair price.

That she never acknowledged the plaintiff's debt nor had any one with authority to bind her ever acknowledged the same, since the death of her father, and in so far as she was concerned the claim was prescribed and she pleaded the prescription of five years. The District Court rendered judgment in favor of the defendant and the plaintiff appealed.

In its reasons for judgment the court declared that the principal facts disclosed by the record were as follows:

On or prior to the 10th day of January, 1887, the plaintiff, Edward W. Burbank, loaned the commercial firm of Ernst & Co., composed of Joseph Buhler, Frederick G. Ernst and Felix Ernst, Jr., the sum of twenty-five thousand dollars. At that time the firm owned a large rice mill on the corner of Julia and Magazine streets in this city, the title to which stood in the individual names of the members of the firm. To secure this debt, the members of Ernst & Co. mortgaged this property by act before Collens, notary, dated January 10th, 1887, and executed their five promissory mortgage notes, signed by them individually, each for the sum of $5,000.00, and which were delivered to the plaintiff.

Joseph Buhler died on the 17th day of May, 1895. At that time the mortgage debt had been reduced by payment from $25,000 to $10,000. The succession of Joseph Buhler was duly opened, and the widow, as natural tutrix on behalf of Christine Buhler, the sole heir, and then a

minor, on the 9th day of December, 1895, obtained an order of court convening a family meeting to deliberate and advise whether it was to the interest of the minor that the partnership of Ernst & Co. should be liquidated in the usual form or partitioned.

The family meeting was composed of the plaintiff, E. W. Burbank, and four others, and was held before Jeff C. Wenck, notary, on the same day the order was granted. The family meeting advised "that a liquidation in the usual form should not take place; that the property and effects of said firm is in such position that a partition is all that is necessary, and that a partition is needed in order that the interests of the minor may be taken out of the co-partnership."

The family meeting was homologated, and in accordance therewith a suit for a partition was brought January 6th, 1896. Attached to the petition for a partition was an account showing the condition of the partnership prepared by the two partners. It was amply solvent; the net interest of the late Joseph Buhler therein over and above all the debts was $38,199.70, of which $19,693.96, was due him on a deposit account, and $18,505.74 was his one-third share in the net assets. This account also showed that at the time the plaintiff, E. W. Burbank, was a mortgage creditor of the partnership for $10,000 and an ordinary creditor holding unsecured notes for $25,000.

A family meeting was then ordered, and held January 10th, 1896, to deliberate on the minor's interest, fix the terms of sale and appraise the minor's share in the assets of the partnership. This family meeting was composed of the plaintiff, E. W. Burbank, and four others, and the under-tutor was present. They had before them the account above mentioned, identified with the act as schedule "A," and declared in the act "that they had examined and understood the schedule 'A,' and were thoroughly informed upon the condition of the partnership, and they advised that said schedule be accepted as a fair project for the settlement of the same, and be made the judgment of the court." They also advised a private sale of the minor's interest in the assets, which they appraised at $19,099.85.

The court thereupon adjudged and decreed that the schedule "A" be approved and homologated, as the basis upon which the partnership should be settled, and that the partition should be made.

A private sale was then made to the new firm of Ernst & Co., composed of the surviving partners of the old firm, and they gave a special

mortgage to secure the minor upon other property of the partnership known as the Planters' Rice Mill, situated on Decatur street, in this city.

The new firm of Ernst & Co., by said adjudication, became the owners of the Julia street rice mill, the mortgaged property, and assumed the payment of the mortgage of $10,000 as one of the partnership debts. From that time the members of the firm considered that they alone were bound on the mortgage notes, and that Christine Buhler had no further interest in the property or partnership, and was in no way liable for the debts.

On the 5th day of May, 1896, Frederick G. Ernst and Felix Ernst, Jr., individually and as members of the commercial firm of Ernst & Co., by an act of that date, passed before Robert P. Upton, notary, acknowledged themselves indebted to the plaintiff in the sum of $30,-000 executed their three promissory notes, each for $10,000, and to secure the same, granted a second mortgage upon the said Julia street property. The plaintiff, Burbank, then held two mortgage notes, each for $5000, making $10,000, dated January 10th, 1887, secured by an act before Collens, notary, and three mortgage notes, each for $10,000, making $30,000, dated May 5th, 1896, secured by act before Upton, notary, or a total of $40,000 mortgage debt upon said property.

In both of said acts it was stipulated that the building upon the property, a valuable rice mill, should be kept insured to the amount of the debt and the policies transferred to the mortgage, to further secure said debt.

Ernst & Co. insured the rice mill—that is, the building and machinery—in various companies, for the sum of $52,000. They transferred to E. W. Burbank policies aggregating $20,000. Owing to a dispute, or for some other immaterial reason, the other policies were not actually transferred.

The building was destroyed by fire on the 29th day of June, 1897. The loss was adjusted by the insurance companies at $44,513.57.

On this sum the insurance companies paid to E. W. Burbank $19,-224, the proportion of the loss due under the policies held by him. They paid to Ernst & Co. most of the balance of the insurance. Ernst & Co. paid out of this insurance to E. W. Burbank the difference between $19,224 and $20,000 and $15,000 additional. Being indebted to E. W. Burbank on mortgage notes and ordinary promissory notes given after

the mortgage notes for loans to carry on their business, Ernst & Co. handed or sent their checks as they collected from the different insurance companies to Burbank without giving him any instructions as to what particular notes to impute the payments. The insurance companies made out their checks for $19,224 to the order of E. W. Burbank. Burbank endorsed this check to Ernst & Co. Ernst & Co. then gave him their check at once for $20,000.

Ernst & Co. then sent him their checks at different times for various amounts aggregating $15,000 additional, as they collected the insurance money. On the receipt of the money, E. W. Burbank, a day or two after, imputed the payment of $10,000 thereof, first, to a $10,000 second mortgage note dated May 5th, 1896, secured by Upton mortgage; next, $5000 thereof to an unsecured promissory note of Ernst & Co. for $5000; next, $10,000 thereof to an unsecured promissory note of Ernst & Co. for $10,000; next and last, $10,000 thereof to another $10,000 second mortgage note dated May 5th, 1896. These notes were sent by Burbank to Ernst & Co. at different times.

None of this insurance money was imputed to the oldest mortgage notes by the plaintiff. Ernst & Co., not Christine Buhler, paid the interest on the first mortgage notes after their assumption, and the plaintiff held their note until after the trial of this case for the whole of the last year's interest, $1687.66, and up to January 10th, 1899.

E. W. Burbank then foreclosed on the two first mortgage notes of $5000 each, aggregating $10,000, against Frederick G. Ernst and Felix Ernst, Jr. The property was sold by the sheriff, who applied $8358.03 to the extinguishment of said notes and interest, leaving a balance due on one of the notes of $3679.74, for which the defendant is sought in these proceedings to be held liable. No demand was ever made for payment on Christine Buhler, nor was she made a party to the foreclosed suit."

The court reached the conclusion of law under the evidence that "plaintiff had not expressly consented to a change of debtors or novated the debt, but that the facts proved established the extinguishment of the debt by payment." It said: "When the building was destroyed by fire the plaintiff held policies of insurance transferred to him amounting to $20,000, to secure under the mortgage act of 1887 the notes of $10,000, upon which the defendant, Christine Buhler, was bound. That mortgage debt was the oldest, and ranked all other debts. The evidence

is conclusive that the plaintiff alone had the right to collect and did receive $19,224 of this money from the insurance companies. He alone, not the defendant, Christine Buhler, or her co-debtors imputed the payment. The plaintiff, under the law, should have paid the first mortgage notes of $10,000 and interest out of this money, and not applied it to the extinguishment of the second mortgage and the unsecured notes, debts alone of Ernst & Co. Arts. C. C. 2163 to 2166, inclusive, On the ground, therefore, that the notes upon which the defendant is sought to be held liable has been extinguished by payment, judgment is rendered in favor of defendant."

*Rice & Montgomery,* for Plaintiff, Appellant.

*Dart & Kernan,* for Defendant, Appellee.

The opinion of the court was delivered by

NICHOLLS, C. J. The notes to which the plaintiff refers in his petition are two of the five joint and several notes which Joseph Buhler, Fred G. Ernst and Felix Ernst, Jr., individually and as members of the commercial partnership of Ernst & Co., of which they were the partners executed on the 10th of January, 1887, before Collens, notary, to secure a loan of twenty-five thousand dollars made to them by plaintiff, Burbank, and which they secured as to payment by special mortgage on certain property described in the act before Collens, the title of which stood in the names of the three mortgagors. In order more effectually to secure the payment of these notes the mortgagors bound themselves in their said capacities to cause all the buildings and improvements to be insured and kept insured against the risk of fire up to the full amount, and up to the final payment of the promissory notes, in capital, interest, and to transfer and deliver to the mortgagee until then the policy or policies of such insurance. The evidence shows that fire policies were taken out by the mortgagors under the stipulation just mentioned and were transferred to and held by him. These policies were not only a protection and security in aid of the payment of the plaintiff's debt in its entirety and the extinction of the mortgage on the property, but also a protection to the owners of their property rights therein. Each one of these three mortgagors was interested in these policies—that they should be taken out, and being taken out, they

should be transferred to the plaintiff and held by him as collateral security for the extinguishment of the notes and mortgage. Joseph Buhler died in 1895, his death carrying with it the dissolution of the partnership of Ernst & Co. The property mortgaged had at that time very valuable improvements upon it and the value largely exceeded the amount of plaintiff's debt. The mortgage debt had at that time been reduced to ten thousand dollars. Joseph Buhler not only then held his interest in the properties of the firm, but the firm owed him additionally a large amount. Buhler left a minor heir, the defendant in this suit, and those having charge of her affairs thought it to be to her interest to at once disconnect her interests from those of the firm. A settlement between the parties was accordingly made by judicial authority, under and through which Fred G. Ernst and Felix Ernst, Jr., acquired her interest in the firm and assumed to pay all its outstanding liabilities, one of the liabilities so assumed being this balance of mortgage debts due to Burbank. It is needless to enquire why matters were left in this particular shape as to this debt. There was certainly no apprehensions felt on account of it by the friends of the minor assembled in family meeting, who recommended this particular course, the plaintiff himself being one of the members at the meeting. The debt was small; the property securing it was largely in excess of the amount of the debt, and the minor stood additionally secured from danger by the personal assumption of the two Ernsts and by the stipulation originally agreed upon, that fire policies should be taken out and transferred to and held by Burbank as collateral. This latter fact minimized any damage resulting from leaving this debt outstanding.

Fred G. Ernst and Felix Ernst, Jr., upon acquiring the entire property formed a new firm under the name of Ernst & Co., and continued in the business of millers, keeping up their business relations with the plaintiff, who loaned them large amounts of money, some of which they secured by special mortgage on the Julia street mill property, which they by reason of their purchase of the Buhler interest, then owned in its entirety, but part of which was left unsecured. From the time of this sale to the two brothers Ernst, up to the institution of the present suit, the defendant seems to have been ignored by all parties, but affairs suddenly (by reason of the destruction by fire of the buildings on the mortgaged property) took such shape as to make her legal position in the premises a matter of very great concern to the plaintiff. By

the destruction of the buildings on the mortgaged property by fire, it became evident to the plaintiff that his interests had become jeopardized. At the time of this fire Burbank held as collateral security policies issued against loss by fire of the buildings on the mortgaged property to an amount of about twenty thousand dollars, which Ernst & Co. had taken out; they holding besides these additional policies to a large amount on the same buildings. These policies with one or two exceptions were collected and as collected the amounts realized were received or turned over to the plaintiff. The particular policies which he held as collateral realized a little over nineteen thousand dollars. Besides this amount Burbank received moneys from the other policies. Instead of applying the moneys so received to the extinction of the outstanding balance of the mortgage notes executed on January 10th, 1887, Burbank felt himself legally warranted in disposing of them as he thought best. He accordingly on receipt of the moneys collected from these policies would return to the Ernsts particular notes, which he himself selected as those which had been paid, though the moneys received and in manner such as to leave outstanding and unpaid the mortgage notes of January 10th, 1887, which stood secured as to payment by the first mortgage on the property. Part of this money was used in paying a second mortgage indebtedness and part (some $15,000) in paying unsecured indebtedness. Fred G. Ernst and Felix Ernst received the notes which were so returned, no objection being made, but giving no consent, other than such consent as might be inferred from silence and inaction. They assign as their reason for not objecting that, knowing that they themselves owed all the notes, it was a matter of indifference to them which notes should be extinguished; that it did not occur to them that the defendant had any interest or concern in the matter; that had they realized that she had, objection would have been made and the notes would have been returned. What we are called on to consider in this case is not what the situation is as between the plaintiff and the two Ernsts, not what these parties, either separately or together, would have been warranted in doing were they alone to be affected, but what the situation is as between the plaintiff and the defendant, whose interests have been, or will be, vitally affected by the course which has been pursued, to which she has given no consent and about which she has not been consulted. It is very true that there are cases wherein it has been held that an imputation of payment made

between a creditor and his debtor is not subject to the control of third persons, or even of parties more or less concerned in the resulting situation, but we have to deal here with special conditions and circumstances, which call for special examination. The defendant can not be classed as a third party to what has taken place in this matter; she has been and is so connected legally with the plaintiff, and the brothers Ernst, as to entitle her to question the validity and legality of the action by which her interests have been sacrificed. Persons are much more free to act in their dealings with each other when their own interests alone are to be affected, than they are when the interests of persons other than themselves will be made to suffer. In *Griffin vs. His Creditors,* 6 Rob. 224, this court said: "We are referred to the rules laid down in the Code for the imputation of payments when two debts are of the same nature and equally onerous. Those rules which are to govern in the settlement of accounts between a debtor and his creditor cannot clearly be enforced to the prejudice of third persons." We find it declared in Dalloz and Verge Codes Annotés, under Art. 1255 C. N. (No. 7): "Les tiers intérressés ne sauraient être liés par l'imputation que le créancier a fait à leur prejudice." (J. G. obligations 2024, V. Art. 1848.)

It becomes necessary, therefore, to ascertain what rights the defendant had in this matter and how far plaintiff was justified in ignoring them. While Buhler, Fred. G. Ernst, and Felix Ernst, Jr., were all bound, as was the first partnership of Ernst & Co., for the debt evidenced by the notes executed in the act before Collins, each of these individuals was, separately, directly interested therein, and Burbank, as the creditor holding the notes, was bound to recognize and protect that interest. The collaterals furnished were given to Burbank for the protection of a particular debt in the payment of which not only Burbank and the two Ernsts were concerned, but also the defendant, plaintiff neither acting alone nor in concert with the two Ernsts could legally divert the collaterals when once placed in his hands for a specific purpose to some other object. The Ernsts in obtaining these policies and placing them as collaterals in the hands of the plaintiff, were not acting in their interests alone, but for and on behalf also of the defendant, and the plaintiff knew this when he accepted the collaterals given for that purpose. Neither he nor the Ernsts were at liberty to change their destination without defendant's consent. Art.

3170 of the Code, referring to the duty of a pledgee, says that "if the credit which has been given in pledge becomes due before it is redeemed by the person passing it, the creditor by virtue of the transfer which has been made to him shall be justified in receiving the amount and in taking measure to recover it. When received, he must apply it to the payment of the debt due to himself and restore the surplus, should there be any to the person from whom he held it in pledge."

What debt must he apply it to? Evidently to the debt for which it was given him in pledge to pay. The interest of the defendant in the Julia street property was transferred to Fred. G. Ernst and Felix Ernst, Jr., charged with the obligation assumed by them of paying the plaintiff and of carrying out the obligation contracted by the mortgagors in the act before Collins of taking out fire policies on the property secured by the mortgage. This obligation they carried out, and defendant had a right to suppose that the plaintiff would respect her rights in the premises. Had they not taken out the policies, the defendant would have been entitled to have done so herself. (C. C. 213); to have held the policies not only for plaintiff but for her own protection in the premises. When the Ernsts obtained and gave them as collateral to plaintiff, it was his duty to hold them for defendant's protection as well as his own. (Baldwin vs. Thompson, 6 La. 479; Gay vs. Blanchard, 32 Ann. 505.)

Had defendant paid the notes, it was plaintiff's duty to have had control of the collaterals and to have either turned them over to the defendant or hold them for his security and benefit. He has diverted the collaterals which had been placed in his hands for the security of a specific mortgage debt to the payment of unsecured debts due him by the Ernsts for an amount larger than was sufficient to have paid the debt for which the policies were given to him as collaterals. Under such circumstances the debt as between the plaintiff and the defendant must be held to have been paid. The diversion of the collaterals carried with it as its result the obligation of the plaintiff to credit the debt to the amount diverted. (Bullet, Miller & Co. vs. Hewit, Norton & Co., XI Ann. 327.)

We think the judgment is correct. It is hereby affirmed.

Rehearing refused.