FOURNET, Justice.
 

 This is a suit by the furnisher of materials used in the repair and remodeling of -a building to recover from the owner the value thereof, with recognition of the materialman’s lien and privilege on the building and premises. It is now before us for a review of the judgment of the Court of Appeal for the Parish of Orleans wherein, the judgment of the lower court dismissing;
 
 *1064
 
 plaintiff’s suit against the owner was annulled and set aside and judgment was rendered in favor of the plaintiff, as prayed for. 8 So.2d 648.
 

 In their argument before this court, both orally and in brief, counsel for plaintiff insist this is an improvidently granted writ which must be recalled, for the reason that we are without power or jurisdiction to review appellate decisions where only questions of fact are involved.
 

 It is true that when writs are sought for the review of appellate court decisions where questions of fact only are involved, this court has consistently refrained from exercising the supervisory jurisdiction granted it under Section 11 of Article VII of the Constitution of 1921 wherein it is declared: “It shall be competent for the Supreme Court to require by writ of certiorari, or otherwise,
 
 any case
 
 to be certified from the Courts of Appeal to it for review.” However, “after a writ of review has been granted, we are obliged to decide the questions of fact as well as the questions of law that are tendered for decision; and to that end it is declared in the Constitution, Article
 
 7,
 
 Section 11, that we shall have ‘the same power and authority in the case’ as if it had come here directly by appeal.” Robichaux v. Realty Operators, Inc., 195 La. 70, 196 So. 23, 27. (Italics ours.)
 

 When the application for the writ in this case was presented for consideration, it appeared to us the conclusion of the Court of Appeal with reference to the imputation of payment as between Helm, the debtor, and the Madison Lumber Company, the creditor, had been reached without the interest of the debtor in discharging the particular debt in controversy and the rights of the defendant Security Building and Loan Association having been taken into consideration. It was for this reason we granted the writ.
 

 Unquestionably, under our law, the debtor has the right to declare which of several debts his payment is to liquidate (Article 2163 of the Revised Civil Code and the jurisprudence thereunder), and if he fails to make such imputation, the right then falls to the creditor. Bloodworth v. Jacobs, 2 La.Ann. 24; Flower & King v. O’Bannon, 43 La.Ann. 1042, 10 So. 376; and Electrical Supply Co. v. Eugene Freeman, Inc., 178 La. 741, 152 So. 510. But “that rule may be subject to some exception, as where the payment, to the knowledge of the creditor, is derived from a source such that it would be a fraud for the creditor to consent with the debtor that the money be diverted and applied otherwise than as the debtor had expressly or impliedly agreed with his sureties.” Grand Lodge, Benevolent Knights of America v. Murphy Const. Co., 152 La. 123, 92 So. 757, 758. See, also, Griffin v. His Creditors, 6 Rob. 216, 224; Burbank v. Buhler, 108 La. 39, 32 So. 201; and Farnsworth & Co. v. Electrical Supply Co., 5 Cir., 112 F.2d 150, 130 A.L.R. 192.
 

 As was aptly pointed out in the Buhler case [108 La. 39, 32 So. 205] : “Persons are much more free to act in their dealings with each other when their own interests alone are to be affected than they are when the interests of persons other than
 
 *1066
 
 themselves will be made to suffer. In Griffin v. His Creditors, 6 Rob. [216] 224, this court said: ‘We are referred to the rules laid down in the Code for the imputation of payments when two debts are of the same nature and 'equally onerous.
 
 Those rules which are to govern in the settlement of accounts between a debtor and his creditor cannot clearly be enforced to the prejudice of third persons.111
 
 (Italics ours.)
 

 The record shows the Security Building and Loan Association entered into a contract with Joseph O. Helm for the repair and remodeling of its building at 814-816 Baronne Street in the City of New Orleans, but did not require a bond of the contractor or have the contract recorded. The materials for this job, amounting to $675.40, where purchased by the contractor from the plaintiff, the Madison Lumber Company. On July 18, 1940, the company filed in the office of the Recorder of Mortgages for the. Parish of Orleans a sworn statement showing the amount due for these materials, and, at about the time this was reinscribed (July 15, 1941), the plaintiff, for the first time, made demand on the Security Building and Loan Association for the payment of the amount. The day following the re-inscription, this suit was instituted against the contractor and the owner of the building, in solido, to recover judgment for the value of the materials, plus $4 for the reinscription of the recordation. Helm, being a non-resident of the state at the time, was not cited, and he made no appearance in the suit other than as a witness.
 

 The defendant building and loan association is relying on the payment of the account in full by the contractor.
 

 The undisputed facts are that the amount of the contract between Helm and the Security Building and Loan Association was paid in four installments, as the work progressed, the final payment, amounting to $938.65, being made by a check dated May 18, 1940. Subsequently, on May 25, Helm paid $800 to the credit manager of the Madison Lumber Company by his own personal check. At that time he owed the company, in addition to the item in controversy here, balances on numerous old accounts (varying from
 
 71‡
 
 to $207.73 and aggregating $961.38) that had accumulated during the years he had been dealing with the company, and, in a letter addressed to him by the credit manager on May 28, 1940, he was advised that this amount had been applied toward the liquidation of the old debts listed in the letter. The letter contains the statement that this was done in accordance with Helm’s instructions.
 

 In its reasons for judgment, the Court of Appeal declares that since this letter was/ written at an unsuspicious time, it served as a confirmation of what had previously been agreed between Helm and Sanders, the company’s credit manager, for “Helm admits having received this letter in due course and that no protest or objection was made thereto.” There is no doubt that the court based its conclusion in the case on this supposed admission by Helm, for again in the opinion we find the statement: “Helm admitted its (the letter of 'May 28)
 
 *1068
 
 receipt and further admitted making neither verbal nor written objection or protest.” (Brackets ours.)
 

 As a matter of fact, the record shows Helm, appearing as a witness in the case testified in a most positive manner he gave no such instructions to Sanders when he made the $800 payment by his personal check No. 26, bearing in the lower left-hand corner the notation “816 Barrone St. Job.” He stated that to the contrary he had instructed Sanders to first liquidate the account covering the materials furnished on the Baronne street job and apply the balance toward the satisfaction of -his old debts. He further testified that upon receipt of the letter of May 28, he went to the office and protested the imputations made by Sanders and that when from time to time thereafter he received statements covering this amount, though not regularly, he again called the matter to Sanders’ attention, finally withdrawing the cancelled check from his bank statement and putting it in his wallet for safe-keeping, in order that he might be in a position to protect the Security Building and Loan Association in the event of any difficulty over the account.
 

 Sanders testified emphatically there was nothing written on the check when Helm handed it to him and that he wrote thereon:
 

 “Madison Lumber Co. 800.00
 

 “Eight Hundred and no/100” and Helm signed it in his presence. When questioned with respect to the date being on the check, Sanders stated: “Evidently not, since I didn’t put it there.” Further interrogated on this point, he said it might have been put there by the cashier of the company. However, when questioned by the court as to whether he meant to convey the idea this check was given to him undated and deposited with the bank in that condition, he said: “I don’t know.” '
 

 The check is in the record and it shows the matter filled in by Sanders and the signature of Helm to be written in green ink. The notation, the date, and the number of the check, however, are written in ink of an entirely different color. There is no doubt that the check was dated when it cleared the bank, as the bank’s perforations through the date show. Furthermore, Sanders’ suggestion that the date might have been filled by his company’s cashier clearly cannot obtain in the face of the positive evidence in the record which proves conclusively the date on the check, its number, and the notation in the lower left-hand corner are all in the handwriting of the contractor’s son, as well as in a different color ink than the matter written by Sanders and Helm, and also in the face of the positive testimony of Helm and his son that when the check was handed to Sanders this data was on the check, having been written there before Helm left his.home to go to the lumber company.
 

 It has been suggested by counsel for the plaintiff that the story of Helm and his son to the effect that “the son.took a blank check and filled in the date and the notation on the lower left-hand corner to the effect that the proceeds thereof, which at the, time had not been fixed, were to be applied to a particular job” was very strange indeed when the job amounted to
 
 *1070
 
 only $675.40 at that time, “whereas the check which is asserted to have been given in payment thereof is for $800.”
 

 Helm’s explanation of this is as follows: He says he was in the habit of having his son fill out his checks and. that after he collected the
 
 money from the
 
 Security Building and Loan Association he asked his son to make out a check to cover the amount of the materials used on its building but that the check was never completed by his son because he (Helm) did not know at the time the exact amount due for these materials. He. then took this unfinished check to Sanders advising he wanted to pay the account for the Baronne Street job in full and that when the credit manager asked him if that was all he had, he replied that he had $800 he could give him applying the balance after liquidating the Baronne street account in full toward his old accounts.
 

 There is nothing so unusual or strange about this that makes Helm’s version border on the fantastic, particularly when the education and background of the people involved is taken into consideration. On the contrary, we think it was not only his duty to discharge this debt affecting the Baronne street property out of the proceeds of the money paid him by the owner of the building, but also that at that time it was the debt he had the “most interest in discharging.”
 

 Finally, counsel argue that “A cursory examination and test by this Court of this check will show that its date was written in a washable type ink, whereas the notation on its lower left-hand corner was written in a permanent type ink. This fact alone proves which of the two lower courts erred in their respective appreciation of the documentary evidence.”
 

 While it is true an examination of the check shows the ink used in writing the date and number on the check and in writing the notation varies, although written by the same person, nevertheless, this fact alone is not sufficient to destroy the other positive evidence -and testimony in the record, particularly when Helm’s son, although testifying in the case, was never questioned on this phase and, therefore, never given an opportunity to explain the variance in the ink.
 

 ■ For the reasons assigned, the judgment of the Court of Appeal for the Parish of Orleans is annulled and set aside and the judgment of the Civil District Court is affirmed, all costs to be paid by the plaintiff.
 

 ODOM, J., absent.
 

 O’NIELL, C. J., dissents on the ground that the case presents only questions of fact and hence the writ of review was granted improvidently and should be recalled.