35 So.2d 132

EASTERLING v. BROOKS.

No. 38433.

Feb. 16, 1948.

Rehearing Denied April 26, 1948.

W. F. Pipes, of Monroe, for intervener and third opponent.

Deutsch, Kerrigan & Stiles, of New Orleans, amicus curiae.

McHenry, Lamkin & Snellings of Monroe, for Easterling.

FOURNET, Justice.

The relator O. A. Walling, as the holder in due course of a $965 note executed by John Young Brooks and secured by a chattel mortgage on a Ford truck, intervened in the proceedings under which Mrs. Marguerite Lamkin Easterling as the lessor of Brooks provisionally seized the truck along with other movable property affected by her lessor's lien in satisfaction of rent due her by Brooks under three separate leases—two of which were executed subsequent to the recordation of intervenor's chattel mortgage—seeking to have the truck separately appraised and sold and the proceeds derived therefrom applied to the payment of his note. Upon the affirmance by the Court of Appeal for the Second Circuit of the judgment of the lower court—with an amendment that did not affect the results reached by the lower court—ordering the sheriff of Ouachita Parish to pay over to Mrs. Easterling the amount derived from the sale of the truck in preference and priority over all persons, the intervenor applied for and was granted this writ of certiorari for the review of the judgment. 28 So.2d 523.

The record shows that on December 1, 1943, Mrs. Easterling leased to Brooks for a period of two years 20 acres of land, together with a portion of the improvements thereon, near Monroe, Louisiana, for $1,400, this rent being payable every 90 days in the amounts fixed in the lease. Of this amount Brooks paid the $200 due on April 1, 1944, and the $300 due on July 1, 1944. Remaining unpaid at the time the suit was instituted were the $200 due on November 30, 1944, the $200 due on April 1, 1945, the $300 due on July 1, 1945, and the $200 due on November 30, 1945, or a total of $900. On March 3, 1944, subsequent to the execution of this lease, Brooks mortgaged to O. A. Walling, the intervenor and third opponent, his Ford truck, to secure the $965 note given Walling. Walling recorded this chattel mortgage on April 8, 1944, at a time when there was nothing due Mrs. Easterling under the lease entered into with Brooks on December 1, 1943, since the rent due on April 1, 1944, had been paid. Almost a year later, on January 13, 1945, Mrs. Easterling leased to Brooks on a month to month basis, for $60 a month, the main dwelling and appurtenant structures on the property that had been excluded from the

first lease because occupied at the time by other tenants, and he moved his family from Monroe to the dwelling where they thereafter resided, he having previously commuted between his Monroe residence and the farm. The rent under this second lease was paid to September 1, 1945. On or about November 1, 1945, with the rent under the first lease not having been paid for a year and the rent under the second lease not having been paid for two months, Mrs. Easterling again leased to the defendant, this time for a period of one year, beginning on November 30, 1945, the date on which the first lease expired, the 20 acres covered by the first lease. The consideration for this lease was $700, payable in fixed monthly amounts in advance. No part of this amount was ever paid.

On March 30, 1946, Mrs. Easterling instituted suit against Brooks to recover the $900 due under the first lease, the $420 due under the second lease covering the main dwelling and out buildings, and $233.33, the proportionate amount due under the third lease at the time the suit was filed, or a total of $1,533.33 (she also cumulated in her suit a claim for $2,670 due her for money loaned the defendant, which has no bearing on the issues now before us), with interest and attorney fees, provisionally seizing all of the personal property of Brooks found on the leased premises, including the truck mortgaged to Walling. The defendant's answer amounting to nothing more than a confession of judg-

ment, the trial judge rendered judgment for the plaintiff as prayed for, recognizing her lessor's lien and privilege and ordering the property seized sold in satisfaction of the judgment. The sheriff thereupon advertised the property for sale. Prior to the date set for the sale, however, Walling intervened in the suit, claiming his chattel mortgage on the truck primed the lessor's lien and praying that it be separately appraised and sold. This was done and the $600 derived from the sale thereof were, under the court's order, retained by the sheriff pending the outcome of Walling's intervention. The other property was sold for $1,235.

In his answer to the intervention Brooks admitted all of the allegations and submitted the issues to the court, praying for all general and equitable relief, but Mrs. Easterling, praying that her lessor's lien and privilege be recognized and maintained as superior to all claims of Walling and that the sheriff be ordered to pay to her the $600 realized from the sale of the mortgaged truck, averred, first, that Brooks borrowed money from a finance service in September of 1945 with which he paid the Walling note; in the alternative, that her lien and privilege primed the chattel mortgage since it was not executed and recorded until after the truck was taken onto the leased premises and had thus become affected by her superior claim.

Mrs. Easterling's effort to prove Walling's mortgage had been extinguished by

payment was unsuccessful, but the lower court, pointing out that Brooks had taken the truck onto the leased premises (although he did not then live there) prior to the time the mortgage was executed, concluded Mrs. Easterling's lien and privilege outranked the chattel mortgage and he rendered judgment recognizing its superiority and ordered the sheriff to turn over to the lessor the $600 derived from the sale of the truck. In the intervention and third opposition he rendered judgment in favor of Walling and against Brooks in the full amount of the note, with interest and attorney fees.

Walling thereupon appealed to the Court of Appeal for the Second Circuit, pointing out that this judgment, in effect, held the entirety of the indebtedness due the plaintiff under all three leases was secured by her lessor's lien and that this lien primed the chattel mortgage. He contended that even conceding, for argumentative purposes, the chattel mortgage was primed by the lien and privilege arising under the first lease, it was error to impute the amounts derived from the property sold other than the truck to the satisfaction of the debt due under the second and third leases, thus leaving the amount due under the first lease to be satisfied out of the funds derived from the sale of the truck. In other words, that since Mrs. Easterling realized more than sufficient funds from the sale of the property other than the truck to pay her claim under her first lien, which primes the chattel mortgage, this amount must be applied toward the liquidation of this obligation; and that since the chattel mortgage primes the liens arising under the second and third leases, this money cannot be used in satisfaction of these debts.

Although agreeing with Walling that his chattel mortgage primed the lessor's claim under the last two leases, and amended the judgment of the lower court accordingly, the Court of Appeal concluded this did not alter the results reached by the lower court since Mrs. Easterling acquired a fixed and vested right against the truck when it became subject to and affected by her lessor's lien and privilege under the first lease "to secure payment, in whole or part, of all the indebtedness due her," she not being required, under the law, "to impute payment in such a way and manner as to impair her rights to the extent that loss would fall upon her."

We think the Court of Appeal erred in this holding for under the law and jurisprudence of this state, in the absence of express agreement to the contrary, it was the duty of the creditor to impute the proceeds derived from the sale of the movables to the debt that was secured, but if of equal rank and dignity, then to the one longest due. Article 2166 of the Revised Civil Code. See, also Madison Lumber Co. v. Helm, 202 La. 1061, 13 So.2d 349, and In re Liquidation of Hibernia Bank & Trust Company, 205 La.

*890, 18 So.2d 330.* Consequently, these proceeds should have been imputed to the rent due under the first lease and which was past due at the time the second lease was executed on January 13, 1945. And since the amount derived from the movables other than the truck was more than sufficient to satisfy the claim under the first lease, which was the only one that primed the intervenor's chattel mortgage, he is entitled to have the $600 realized from the sale of the truck applied to the satisfaction of the note held by him in preference and priority over the lessor's subsequently acquired rights under the last two leases.

For the reasons assigned the judgment of the Court of Appeal for the Second Circuit, in so far as it orders the sheriff of Ouachita Parish to pay over the $600 realized from the sale of the truck to the lessor and casts the intervenor for the costs of the intervention and third opposition, is annulled and set aside and it is now ordered, adjudged, and decreed that there be judgment in favor of the intervenor and third opponent, O. A. Walling, and against the lessor, Mrs. Marguerite Lamkin Easterling, ordering the sheriff of Ouachita Parish to pay over to the intervenor the proceeds of the sale of the truck, to be applied toward the payment and satisfaction of the judgment rendered in his favor in preference and priority over all other claims, and particularly those of Mrs. Marguerite Lamkin Easterling;

in all other respects the judgment is affirmed. All costs of the intervention and third opposition and of the proceedings in this court are to be paid by Mrs. Marguerite Lamkin Easterling.

O'NIELL, C. J., absent.