209 So.2d 502 (1968)
John Watt DUFFY, d/b/a Duffy Lumber Company
v.
Billie Anne BOURG, wife of/and Joseph C. ROMAN, Jr., et al.
No. 2928.
Court of Appeal of Louisiana, Fourth Circuit.
April 8, 1968.
Rehearing Denied May 6, 1968.
*503 Donald N. Memmer, New Orleans, for plaintiff-appellee.
Graham & Graham, Louis B. Graham, New Orleans, for defendants-appellants.
Before REGAN, SAMUEL and CHASEZ, JJ.
SAMUEL, Judge.
Insofar as the appeal is concerned, this is a suit by the furnisher of lumber, materials and supplies used in the construction of a residence to recover from the owners, Billie Anne Bourg, wife of/and Joseph C. Roman, Jr., and the general contractor, Hernandez Contracting Corporation (hereinafter sometimes referred to as "Hernandez"), in solido, the sum of $1,877.02, the purchase price thereof, with recognition of plaintiff's materialman's lien and privilege on the property. The Romans answered denying liability, pleading payment and praying that the lien be cancelled. The corporate defendant did not make an appearance; it had gone into bankruptcy. After trial there was judgment in favor of plaintiff and against the defendants as prayed. Only the defendant owners have appealed.
The pertinent facts are not in dispute. The defendant corporation commenced its business of constructing residences in the New Orleans metropolitan area on February 4, 1964. The following month it began purchasing materials and supplies from the plaintiff, for a short time paying each invoice *504 as it became due. Thereafter plaintiff carried Hernandez on an open account basis, keeping all Hernandez purchases on general ledger sheets which identified each purchase by a description of the building site or job. Each month plaintiff sent to Hernandez a statement detailed as to the month's purchases for particular building or job sites. The total of that month's purchases thereafter was carried on each next monthly statement simply as a lump sum balance without further description. All payments were credited to that balance.
On July 28, 1965 Hernandez and the Romans entered into a building contract calling for the construction of a single family dwelling on Lot 25 of Casa Bella Subdivision, in the Parish of St. Bernard, for the sum of $18,800 payable in five progressive installments. The contract was recorded but no bond was furnished in connection therewith. Lumber, materials and supplies used in the Roman building were purchased by Hernandez from plaintiff in the total amount of $1,877.02, the sum in suit. The first delivery of those purchases to the Roman job site occurred on September 7, 1965. At that time plaintiff had extended credit to Hernandez in the total amount of $56,512.15 on which Hernandez had paid $32,943.29, all without designation as to how the same should be applied, leaving a $23,568.86 balance due on open account.
Subsequent to September 7, 1965 Hernandez, who was then engaged in the Roman and other construction, paid plaintiff several lump sums totaling $13,500, also without designation with the exception of one $5,000 payment which, by agreement between plaintiff and Hernandez, was to be applied to four particular jobs older than the Roman contract. The $5,000 payment was applied as agreed and the balance of the $13,500 was credited to the oldest unpaid individual invoices. Those payments were made as follows: October 21, 1965-$3,000; November 23, 1965-$2,500; January 12, 1966-$5,000; and February 2, 1966-$3,000.
Appellants paid Hernandez $500 on the date their building contract was executed. Between September 7, 1965 and May, 1966 the first three installments due under the contract, totaling $13,600, were paid to Hernandez by a mortgage corporation, holder of a mortgage on the Roman property. Hernandez deposited these payments in its bank account and made the above referred to lump sum payments totaling $13,500 to plaintiff by Hernandez checks. Hernandez did not complete construction of the Roman building; it filed in bankruptcy in May, 1966. Plaintiff did not lien any property until just about the time the defendant corporation went into bankruptcy. He then filed liens against the latest buildings. The lien against the Roman property was filed on May 18, 1966.
The question presented is one of imputation: How should the $13,500 paid by Hernandez to plaintiff between September 7, 1965 and May, 1966 be credited? Plaintiff's position is that although the debtor of several debts has a right to declare what debt he intends to discharge when he makes payment, if he makes no imputation the creditor may apply the payment as he sees fit; and here in view of the fact that, with the exception of the January 12, 1966 $5,000 payment, which was applied as agreed between plaintiff and Hernandez, none of the payments made by Hernandez subsequent to the first delivery to the Roman construction indicated to which job sites the same were to be credited, plaintiff had the right to credit those payments to the oldest unpaid invoices as he did.
It is true that payments made by a debtor of several debts may be imputed as provided by Articles 2163 and 2166 of the Civil Code, which read as follows:
"The debtor of several debts has a right to declare, when he makes a payment, what debt he means to discharge." LSA-C.C. Art. 2163.
"When the receipt bears no imputation, the payment must be imputed to the debt, which the debtor had at the time most interest in discharging, of those that are equally due; otherwise to the debt which *505 has fallen due, though less burdensome than those which are not yet payable." LSA-C.C. Art. 2166.
However, these rules are not necessarily applicable where third parties are involved. The debtor and creditor are much more free to act in dealing with each other when only their own interests can be affected than they are when the interests of innocent third parties may be made to suffer. See Madison Lumber Co. v. Helm, 202 La. 1061, 13 So.2d 349; Burbank v. Buhler, 108 La. 39, 32 So. 201; Griffin v. His Creditors, 6 Rob. 216. Clearly a contractor is not free to impute payments for materials as he sees fit. In case of default on the contract or default in payments of claims for material or labor, LSA-R.S. 14:202 makes it a misdemeanor punishable by fine and imprisonment for the contractor to apply any money received on account of a construction contract to any other purpose than the settlement of claims for material and labor due or to become due for such construction.
What our predecessor court said in Roca v. Caruso, 7 Orl.App. 451, 453, relative to the materialman's lien statute, then Act 134 of 1906, is particularly apropos:
"The statute under consideration has made furnishers of building materials a favored class among merchants, but they should not be permitted to abuse the legislative favor. A contractor has no right either in law or in morals to make a payment with money earned in one contract and have that payment imputed to some other account even though older, whilst the debt incurred by him in connection with such contract is still unpaid. Simple good faith would require that he have such payment imputed to the account which grows out of the contract under which the money was earned. To follow any other course would be manifestly [sic] to prejudice the right of surety, if there be one, or of the owner who has trusted him.
And it is equally unfair for a furnisher of material, knowingly to receive of a contractor money paid to the latter under one contract, and impute the same to some other account whilst the debt incurred in connection with the contract remains unpaid. By that simple system any furnisher of materials would have it in his power to prejudice of [sic] the rights of one surety or owner to the advantage of another, as his pleasure or interest might suggest. He might even recoup losses due to his own negligence or laches, by imputing such payments to some worthless account, and in due course falling on a new surety or owner for the whole amount of the new account.
We are of opinion that payments made with money earned on one contract should be imputed first to the debt incurred in connection with that contract. Equity requires it, and no law prevents.
The statute under consideration is a special one, and sui generis; the provisions of our Civil Code, regulating the imputation of payments have no application to the peculiar conditions brought about by this statute, and wholly unforeseen by the authoris [sic] of the Code. (Civil Code, Art. 2.) Articles 21 and 1965 of that Code are much more applicable." (Emphasis added).
Where the contractor owes the furnisher of materials more than one debt for materials used in several constructions and the latter knows that funds paid to him by the contractor were received by the contractor on account of one of those debts, the materialman cannot apply such funds to another debt to the prejudice of the paying owner. Madison Lumber Co. v. Helm, supra; Grand Lodge, B. Knights of America v. Murphy Const. Co., 152 La. 123, 92 So. 757; Baudoin v. Gallier, La.App., 153 So.2d 169; Hortman-Salmen Co. v. Naquin, 12 La.App. 491, 126 So. 453; Roca v. Caruso, supra.
Here we are satisfied plaintiff knew the $13,500 paid to him by Hernandez subsequent to September 7, 1965 was obtained by *506 the latter solely from payments received on account of recent or current construction, including the Roman job, and not from the older accounts to which they were credited.
The record reveals plaintiff became concerned as the Hernandez account became more delinquent. In the very early part of October he discussed the matter with the defendant corporation's president, demanding that the account be brought to a current condition. Thereafter on several occasions the president informed plaintiff he was trying to obtain additional capital from certain named people because, although enough money was being made, additional work capital was needed to finance the jobs he had under construction. Plaintiff obtained financial statements from Hernandez in October and November, 1965 which, according to plaintiff, showed twenty jobs (the statements are not contained in the record and the Hernandez president testified there were about eight or ten such jobs) in the process of construction, including the Roman job, from which it was hoped sufficient amounts would be realized to pay all overdue accounts. Neither the defendant corporation nor its president had any source of revenue other than the construction then going on and no additional capital was obtained. Plaintiff himself testified he presumed (and we are convinced he knew) the $13,500 paid by Hernandez subsequent to September 7, 1965 had been received by that corporation on account of jobs other and newer than those to which plaintiff credited that amount.
We also note, as pointed out above in connection with the criminal statute LSA-R.S. 14:202, Hernandez legally could not impute the payments it made subsequent to September 7, 1965 to any construction other than those debts on account of which it had received such funds. Yet by agreement between Hernandez and plaintiff the $5,000 payment made by the former to the latter on January 12, 1966 was imputed to older constructions other than those on account of which such funds had been paid. By agreeing to that imputation despite his knowledge of the source of those funds, apparently even by suggesting it, plaintiff actively participated in that illegal imputation.
As the payments made by and on behalf of the defendant owners to the contractor were more than ample to pay the full indebtedness due plaintiff for the lumber, materials and supplies purchased by Hernandez from plaintiff and used in the construction of said defendants' building, we are of the opinion that plaintiff's suit against Mr. and Mrs. Roman must be dismissed and his lien ordered cancelled.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment in favor of the defendants, Billie Anne Bourg, wife of/and Joseph C. Roman, Jr., and against the plaintiff John Watt Duffy, d/b/a Duffy Lumber Company, dismissing said plaintiff's suit as to those defendants. It is further ordered that the materialman's lien in favor of plaintiff recorded on May 18, 1966 in the Parish of St. Bernard, Louisiana, in MOB 86 folio 451 upon the following described property to wit:
"THAT CERTAIN LOT OF GROUND, together with all buildings and improvements thereon, situated in the Parish of St. Bernard, Louisiana, in that portion known as GALLO DRIVE EXTENSION, being a resubdivision of a portion of original Lot #3 of Corrine and Myrtle Grove Plantations in S 4 T 13 S R 13 E, per plan of Eugene I. Estopinal and Associates, C.E., dated May 14, 1963, designated as Lot 25, situated in that part bounded by Gallo Drive, Ohio Street, Louisiana Highway #39, a 50-foot right of way in favor of Creole Gas Line and the boundary line of said subdivision adjoining Chalona Subdivision. Lot 25 commences 85 feet from the corner of Gallo Drive and Ohio Street, and measures thence 77.8 feet front on Gallo Drive, the same in width in the rear, by a depth of 71.2 feet between equal and parallel lines. According to a survey by J. J. *507 Krebs and Sons, C.E., dated June 20, 1965, said Lot 25 is in CASA BELLA SUBDIVISION. Improvements thereon bear the Municipal No. 2324 Gallo Drive. Being the same property acquired by Billie Anne Bourg, wife of/and Joseph C. Roman, Jr. by act before L. B. Graham, Notary Public, dated July 28, 1965, registered in COB 92 folio 189."
be cancelled and erased; and it is further ordered that the plaintiff-appellee pay all costs of this appeal.
Reversed.