601 So.2d 345 (1992)
DELTA BANK AND TRUST COMPANY
v.
Kyle C. CHISHOLM.
No. 92-CA-108.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 1992.
*346 Robert G. Creely, Amato & Creely, Gretna, for defendant-appellant.
Dominick Scandurro, Jr., Belle Chasse, for plaintiff-appellee.
Before KLIEBERT, GRISBAUM and CANNELLA, JJ.
GRISBAUM, Judge.
This appeal arises out of the enforcement of a continuing guarantee. We affirm.

ISSUES
We are called upon to determine three specific issues:
(1) Whether the trial court erred in its finding that the promissory note was not materially altered;
(2) Whether the trial court erred in holding that the release of two other solidary sureties did not prejudice defendant's rights; and
(3) Whether a violation by the trial judge of La.R.S. 13:4207 (requiring rendering of judgment within 30 days of a matter being submitted) gives rise to a claim by defendant that "judicial interest from the date of demand until paid" should not be strictly adhered to.

FACTS
Kyle C. Chisholm, defendant-appellant, and Danny Bowles and Houston Bowles each owned one-third of Delta Bay Craft, Inc. (Delta Bay), a Louisiana corporation. On November 5, 1981, defendant signed a continuing guarantee on behalf of corporate debts up to $170,000.00. On November 13, 1981, Danny Bowles, in his capacity as secretary of Delta Bay, signed a promissory note in the amount of $25,000.00. This note (Note 12543) was held by Delta Bank and Trust Company (Delta Bank), plaintiff-appellee. This note was secured by three separate continuing guarantees, ones signed by each of the Bowles and the one by Chisholm.
On July 12, 1983, Delta Bay instituted bankruptcy proceedings, which ultimately resulted in liquidation of its assets pursuant to Chapter 7 of the Bankruptcy Code. At this time, Delta Bay's indebtedness on Note 12543 was $29,186.59, as evidenced by the bank's ledger.
Delta Bank negotiated a settlement with Danny Bowles and Houston Bowles pursuant to their continuing guarantees, reserving their rights against defendant. On April 15, 1986, Delta Bank settled with the Bowles for $80,000.00, which was applied pro rata to four notes guaranteed by the Bowles then held by the bank, one of which was Note 12543. Of the $80,000.00, $21,889.94 was applied to Note 12543, leaving a balance of $7,290.65 (subsequently reduced at trial to $7,210.91). Delta Bank sued Chisholm for this balance, and, following a July 1988, trial, he was subsequently cast in judgment on October 31, 1991 for this amount plus costs and legal interest.

ANALYSISISSUE ONE
Material alteration is defined in La.R.S. 10:3-407, which reads:
(1) Any alteration of an instrument is material which changes the contract of *347 any party thereto in any respect, including any such change in
(a) the number or relations of the parties; or
(b) an incomplete instrument, by completing it otherwise than as authorized; or
(c) the writing as signed, by adding to it or by removing any part of it.
(2) As against any person other than a subsequent holder in due course
(a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;
(b) no other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given.
(3) A subsequent holder in due course may in all cases enforce the instrument according to its original tenor, and when an incomplete instrument has been completed, he may enforce it as completed.
Comment 1 to La.R.S. 10:3-407 indicates that only parties to the instrument may assert this defense. It reads as follows:
Purposes of Changes and New Matter:
The changes are intended to remove uncertainties arising under the original sections, and to modify the rules as to discharge:
1. Subsection (1) substitutes a general definition for the list of illustrations in the original Section 125. Any alteration is material only as it may change the contract of a party to the instrument; and the addition or deletion of words which do not in any way affect the contract of any previous signer is not material. But any change in the contract of a party, however slight, is a material alteration; and the addition of one cent to the amount payable, or an advance of one day in the date of payment, will operate as a discharge if it is fraudulent.
Specific mention is made of a change in the number or relations of the parties in order to make it clear that any such change is material only if it changes the contract of one who has signed. The addition of a comaker or a surety does not change in most jurisdictions the contract of one who has already signed as maker and should not be held material as to him. The addition of the name of an alternative payee is material, since it changes his obligation. Paragraph (c) makes special mention of a change in the writing signed in order to cover occasional cases of addition of sticker clauses, scissoring or perforating instruments where the separation is not authorized.
Our jurisprudence provides that, before an alteration will void an obligation, it must be both material and fraudulent. Ouachita Nat'l Bank v. Palowsky, 570 So.2d 114 (La.App.2d Cir.1990). A material alteration is one which affects or attempts to affect the terms of the contract and changes the force and effect of an instrument. Whitney Nat'l Bank of New Orleans v. Derbes, 436 So.2d 1185 (La.App. 4th Cir.1983), writ denied, 441 So.2d 1220 (La. 1983), cert. den., 466 U.S. 938, 104 S.Ct. 1912, 80 L.Ed.2d 460 (1984).
The record shows that the defendant admitted he never revoked the continuing guarantee and has never questioned its validity.
At trial, Chisholm noticed for the first time that Note 12543 had been stamped "paid" on October 1, 1982, and the stamp had subsequently been covered with "liquid paper," therefore claiming this act constituted a material alteration of the note.
The evidence shows that the only parties to the note were Delta Bay and Delta Bank. Chisholm was never a party to this instrument. His liability for the remaining balance of the note (after the bank settlement with the Bowleses) is premised upon his continuing guarantee of the corporation debts. As a matter of record, the "alteration" was simply a bank employee's honest mistake. No party to the note, neither Delta Bank nor Delta Bay, has ever alleged that the note was paid. Accordingly, we find that the stamp and subsequent erasure did not change the terms of any of the *348 parties' contract on the note. Ergo, this assignment has no merit.

ANALYSISISSUE TWO
La.C.C. arts. 1795, 3045, and 3055 on suretyship are pertinent.
Art. 1795 reads:
An obligee, at his choice, may demand the whole performance from any of his solidary obligors. A solidary obligor may not request division of the debt.
Unless the obligation is extinguished, an obligee may institute action against any of his solidary obligors even after institution of action against another solidary obligor.
Art. 3045 reads:
A surety, or each surety when there is more than one, is liable to the creditor in accordance with the provisions of this Chapter, for the full performance of the obligation of the principal obligor, without benefit of division or discussion, even in the absence of an express agreement of solidarity.
Art. 3055 reads:
Co-sureties are those who are sureties for the same obligation of the same obligor. They are presumed to share the burden of the principal obligation in proportion to their number unless the parties agreed otherwise or contemplated that he who bound himself first would bear the entire burden of the obligation regardless of others who thereafter bind themselves independently of and in reliance upon the obligation of the former.
Additionally, art. 1864 reads, "An obligor who owes several debts to an obligee has the right to impute payment to the debt he intends to pay. The obligor's intent to pay a certain debt may be expressed at the time of payment or may be inferred from circumstances known to the obligee."
Our jurisprudence provides that, generally, a debtor has the right to declare which of several debts his payment is to liquidate. However, he cannot do so if, to the creditor's knowledge, the payment would defraud a surety. Madison Lumber Co. v. Helm, 13 So.2d 349, 202 La. 1061 (La.1943); Whitney Nat'l Bank, supra. When a debtor fails to impute payment to a particular debt, the creditor may exercise the right. Whitney, supra; Cent. Acceptance Corp. v. McCrory, 432 So.2d 1087 (La.App. 3d Cir.1983). The intent to discharge a particular debt can be either expressed or inferred from the circumstances surrounding the payment. Lone Star Indus., Inc. v. Am. Chem., Inc., 480 So.2d 730 (La. 1986), aff'd on reh'g, 491 So.2d 1333 (La. 1986). If the debtor or his agent has directed the application of proceeds to a particular debt, a creditor is obliged to do so, and if the creditor has imputed by receipt, without objection from the debtor, the guarantor has no standing to object. The third party cannot force a debtor to impute his payment in a particular fashion, nor can he abrogate the creditor's right to impute by receipt when the debtor has failed to declare. Whitney, supra.
We note that the defendant has admitted in brief that the three guarantors on Delta Bay's indebtedness (Note 12543) were solidary obligors. Therefore, creditor Delta Bank had the right to look to any one of them for full payment of the note. Because there is no evidence of an agreement between the sureties as to their virile shares, these are presumed to be one-third each.
The record evidence demonstrates the following scenario, to-wit:
Delta Bank reached a settlement with the Bowleses regarding four notes guaranteed by the Bowleses held by the bank. One of these notes was the Delta Bay Note 12543; the other three are unrelated to this defendant. Although it is not expressly stipulated in the release, Delta Bank applied the $80,000.00 pro rata among the four notes. Approximately $22,000.00 of the settlement was applied to Note 12543, reducing its balance to $7,210.91. Mathematically, 75 percent of the note was paid, leaving 25 percent unpaid, the amount for which Delta Bank sued Chisholm.
We conclude the pro rata application of the settlement between the four notes is not contrary to law. Furthermore, defendant has no right to challenge the payment arrangements made by Delta Bank and the *349 Bowleses. Therefore, we cannot see how Delta Bank's actions prejudiced defendant, as the bank could have looked to him for the entire amount of the note, or held him liable for his virile share of one-third. Ergo, this assignment lacks merit.

ANALYSISISSUE THREE
La.R.S. 13:4207 reads:
The district judges and the judges of the city courts, shall render judgments in all cases taken under advisement by them, within thirty days from the time the cases are submitted for their decision. All motions or applications for a new trial shall be passed upon by these judges within seven days from the time such motions or applications for a new trial are submitted to them for their decision; but by the written consent of the attorneys representing both sides, filed in the records or spread upon the minutes, the time herein granted may be extended for a further period of ten days, but no longer.
SUPREME COURT RULE
(Part G. General Administrative Rules, § 2)
Rule 13:4207.1 Cases Under Advisement
Rule 13:4207.1 (applicable to La.R.S. 13:4207).
(a) When Submitted. A case or other matter shall be considered as fully submitted for decision to the trial judge, and should be decided, immediately upon the conclusion of trial or hearing, and judgment signed expeditiously thereafter.
In an exceptional case when the record has been left open upon the conclusion of trial or hearing for the filing of testimony by deposition and/or documents, such depositions and/or documents shall be filed within fifteen days and the case or matter shall be considered as fully submitted, and should be decided, immediately after such filing or the lapse of fifteen days, whichever occurs sooner.
If the court, in an exceptional case, orders post-trial or post-hearing briefs, or orders the transcript prepared, plaintiff shall be allowed a maximum of twenty days within which to file a brief; defendant shall be allowed a maximum of twenty days from the filing or lapse of time for filing plaintiff's brief (whichever occurs sooner) within which to file a brief. If the defendant timely files a brief, plaintiff shall be allowed a maximum of ten days to file a rebuttal brief. When briefs are so ordered, the case or matter shall be considered fully submitted on the day following the day of the latest timely filing of a brief or, at the latest, the day following the last day for filing of briefs. The judge may extend the time for filing a brief for a reasonable period not to exceed the original time granted.
If a transcript of the evidence, in an exceptional case, is deemed essential and is ordered by the court, it shall be filed within thirty days following the conclusion of trial or hearing. When necessary, for good cause shown, one extension may be granted by the judge not to exceed an additional fifteen days for filing of the transcript.
(b) Reports. Each judge of a district, juvenile, family, parish, city municipal or traffic court shall report to this court, through the office of Judicial Administrator, on or before the tenth day of each month, all cases which have been fully submitted and under advisement for longer than thirty days, together with an explanation of the reasons for any delay and an expected date of decision.
La.R.S. 13:4210 reads:
All judges mentioned in R.S. 13:4207 through 13:4209 who shall violate those provisions or requirements, relative to the time within which they shall render decisions as aforesaid, shall forfeit one quarter's salary for each violation. The clerk of court shall notify the auditor of any failure on the part of the judge to render a decision within the time prescribed herein. The auditor, upon receiving such notification from the clerk of court, shall withhold from such judge the payment of one quarter's salary, which amounts shall be paid by the auditor into the general school fund.
The record shows that, at the conclusion of testimony, July 19, 1988, the trial court granted ten days for the parties to submit *350 post-trial memoranda (July 29 and August 8, respectively). The case was then taken under advisement. Judgment was not rendered until over three years later, on October 31, 1991, and defendant was cast with legal interest from the date of judicial demand. The record contains a request by plaintiff dated October 5, 1990 for the trial court to render judgment and written reasons. There is no indication the case was held open or reopened for the taking of additional testimony, or for any other matters. Therefore, the trial court's failure to render judgment for over three years constitutes a violation of La.R.S. 13:4207.
While La.R.S. 13:4210 provides a penalty for the trial judge, no case law or statute appears to afford a direct remedy to the litigant who has been prejudiced by the trial court's delay in rendering judgment. However, counsel of record for an aggrieved party has an absolute right to protect the integrity of our statutory scheme by mandamus. Therefore, although we are frustrated by the amount of interest this defendant is being forced to pay, the innocent plaintiff is not the rightful party to bear this frustration.
For the reasons assigned, the judgment of the trial court is hereby affirmed. All costs of this appeal are to be assessed against the appellant.
AFFIRMED.